**S. Robert DAVIS, Plaintiff,**

v.

**DCB FINANCIAL CORP., et al., Defendants.**

**No. C–2–02–625.**

United States District Court, S.D. Ohio, Eastern Division.

March 27, 2003.

666

Kevin Robert McDermott, Jay R. Dingledy, Elaine M. Durr, Schottenstein Zox & Dunn–2, Columbus, OH, for plaintiff.

Quintin Franc Lindsmith, James P. Schuck, Bricker & Eckler–2, Columbus, OH. for defendants.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action filed by plaintiff S. Robert Davis against DCB Financial Corp. ("DCB"), the board of directors of DCB, and the individual directors. Plaintiff, a citizen of the state of Florida, relies on diversity of citizenship under 28 U.S.C. § 1332 as the basis for jurisdiction. Plaintiff is allegedly a shareholder of DCB, an Ohio corporation. DCB is the parent corporation of the Delaware County Bank and Trust Company, a wholly owned subsidiary located in Lewis Center, Ohio.

Plaintiff alleges in his complaint that in December of 2001, DCB announced a declaration of losses for accounting purposes, referred to as a "write down," reflecting the revaluation or disposal of certain fixed assets and a reassessment of the useful lives of certain prepaid expenses and other assets. This write down allegedly resulted in a decrease in DCB's earnings for the fourth quarter of 2001.

The first four claims asserted in the complaint are claims which plaintiff seeks to pursue as a shareholder derivative action pursuant to Fed.R.Civ.P. 23.1. In his first claim, styled "Material Misrepresentation," plaintiff alleges that DCB failed to mention the write down in its form 10–Q filed with the Security and Exchange Commission ("SEC") on November 14, 2001, in violation of DCB's reporting requirements. Plaintiff further alleges that DCB's annual report contained conflicting statements concerning the reason for the write down, and that the directors concealed the true nature and extent of the financial condition of DCB by not properly disclosing the nature of the write down.

In his second claim, plaintiff alleges that the directors breached their fiduciary duty to the shareholders of DCB by failing to properly disclose the reasons for the write down. In his third claim, plaintiff alleges that DCB failed to follow proper reporting and accounting procedures in connection with the write down, and failed to properly recognize the losses comprising the write down in the periods in which they occurred. In his fourth claim, plaintiff requests an accounting to determine the origins of the write down and the impact which the write down had on the financial assets of DCB.

In his fifth claim, which he pursues in his individual capacity, plaintiff alleges that he was wrongfully denied his right to inspect and review DCB's books and records of account in violation of Ohio Rev. Code §· 1701.37(C).

This matter is before the court on the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted.

*I. Standards Applicable to Motion to Dismiss*

■ Where defendants raise the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Jones v. City of Lakeland,* 175 F.3d 410, 413 (6th Cir.1999); *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990). Where, as here, the defendants argue that the facts alleged by the plaintiff in the complaint are insufficient to establish subject matter jurisdiction, the trial court takes the allegations in the complaint as true. *Jones,* 175 F.3d at 413; *Ohio National Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990).

A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir.1978).

A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987).

*II. Requirements for a Derivative Action*

Plaintiff has asserted his claims of "material misrepresentation," breach of fiduciary duty, improper accounting practices, and request for an accounting as derivative claims. Defendants argue that plaintiff has failed to allege sufficient facts to establish his standing to bring the derivative claims contained in the complaint.

In a shareholder derivative action, Fed. R.Civ.P. 23.1 requires that the plaintiff "allege with particularity" the efforts plaintiff made to obtain the action desired from the directors, and the reasons for failing to make a pre-suit demand. Essentially the same requirement is contained in Ohio Civ. R. 23.1, which provides in relevant part:

> In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege ... with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort.

■ Whether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation. *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 108–09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); *McCall v. Scott,* 239 F.3d 808, 815 (6th Cir.2001). The law of the state of incorporation controls even when the derivative claims are brought under federal law. *Kamen,* 500 U.S. at 96–97, 111 S.Ct. 1711.

Thus, this court must look to the demand requirements under Ohio law.

Under Ohio Rule 23.1, a complaining shareholder must (1) spell out the efforts made to have the directors or other shareholders take the action demanded; (2) explain why he failed in this effort or did not make it; and (3) show that he fairly and adequately represents the interests of other similarly situated shareholders. *Weston v. Weston Paper and Manufacturing Co.*, 74 Ohio St.3d 377, 379, 658 N.E.2d 1058 (1996). Where a plaintiff does not comply with the requirements of Rule 23.1, the plaintiff has no standing to bring suit. *Grand Council of Ohio v. Owens*, 86 Ohio App.3d 215, 220, 620 N.E.2d 234 (1993). Standing is one component of the Article III case or controversy requirement which limits the jurisdiction of federal courts. *Adult Video Ass'n v. United States Dept. of Justice*, 71 F.3d 563 (6th Cir.1995). The party seeking a federal forum bears the burden of alleging facts demonstrating that he has standing and is a proper party to invoke judicial resolution of the dispute. *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Ohio law presumes that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation. *See Drage v. Procter & Gamble*, 119 Ohio App.3d 19, 24, 694 N.E.2d 479 (1997); Ohio Rev.Code § 1701.59(C)(1). The board of directors has the primary authority to file an action on behalf of the corporation. *Drage*, 119 Ohio App.3d at 24, 694 N.E.2d 479. Corporate management must be given the first opportunity to institute litigation, since the responsibility for determining whether or not a corporation should pursue a claim for damages in court is ordinarily a matter of internal management left to the discretion of the directors. *Owens*, 86 Ohio App.3d at 221–222, 620

N.E.2d 234. A shareholder has no independent right to bring suit on behalf of the corporation unless the board refuses to do so and that refusal is wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias on the part of the directors. *Drage*, 119 Ohio App.3d at 24, 694 N.E.2d 479.

A shareholder may proceed with an action without making a demand when the shareholder can demonstrate that the demand would have been futile. *Id.* at 25, 694 N.E.2d 479. "Futility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Id.* It is not enough to show that the directors simply disagree with the shareholder about filing suit, nor is futility automatically established by the fact the directors are targeted as the wrongdoers in the suit. *Id.* "[A] bare allegation that the directors would not want to sue themselves or each other does not show that demand would be futile." *Id.* Rather, the plaintiff must point to facts which show that the presumed ability of the directors to make unbiased, independent business judgments about whether it would be in the corporation's best interests to file the action does not exist in this case. *Id.* at 26, 694 N.E.2d 479.

In this case, plaintiff does not allege that he made a demand upon DCB or any of the directors to commence an action concerning the write down on behalf of the corporation. He only alleges that he wrote to the board of directors asking for an accounting of the write down and requesting to inspect DCB's books and records. Complaint, ¶ 15. He does not allege that the directors never granted his request for inspection, but only that they failed to respond by the dates specified by plaintiff. Complaint, ¶¶ 15, 52.

Plaintiff has also failed to allege facts showing that such a demand would be futile. He alleges that the action cannot be prosecuted by the directors "because they have participated in, caused and acquiesced in the wrongs alleged herein" and that a demand to file suit would thus require the directors to sue themselves. Complaint, ¶ 15. He also alleges that the directors "are adversely interested and involved in the deliberate concealment of financial data as alleged herein." Complaint, ¶ 15. However, the complaint contains only broad, conclusory allegations of misrepresentation, breach of fiduciary duty, and failure to follow proper accounting procedures against the directors as a group. He alleges no facts, beyond pure speculation, as to what items were included in the write down. He does not identify what role, if any, that the individual board members had in the write down. He does not allege facts showing that all of the board members were involved in the alleged misconduct, so that none of them would be capable of acting independently on behalf of the corporation. He does not allege that any of the directors gained any personal advantage from the write down or had some other self-serving bias against any challenge to the write down. The facts contained in plaintiff's complaint are insufficient to establish that all of the directors of DCB are incapable of exercising an independent and unbiased business decision on whether to challenge any aspects of the write down in court.

■ Ohio law also requires proof of damages to the corporation as a prerequisite to any shareholder's derivative suit. *See Brown v. Ferro Corp.*, 763 F.2d 798, 803–04 (6th Cir.1985)(citing *Barsan v. Pioneer Savings and Loan Co.*, 163 Ohio St. 424, 127 N.E.2d 614 (1955)). In this case, plaintiff has not alleged that the corporation actually sustained damages as a result of an improper write down or any inappropriate actions of the directors. He does

not allege what items were included in the write down, but simply speculates as to what those items might be. *See* Complaint, ¶ 26. He has alleged no facts which, if proved, would establish that the write down was improper or that DCB had sustained damages as a result. He has alleged that as a result of "operational and structural inefficiencies the assets of DCB have been jeopardized." Complaint, ¶ 27. However, he does not allege that any assets were improperly lost. He summarily alleges that as a result of a breach of fiduciary duty on the part of the directors, "DCB has been damaged by having its entity value decreased in an amount to be determined after this Court compels a proper accounting of the Write Down." Complaint, ¶ 38. The very phrasing of this allegation reveals that it is purely speculative as to whether there has been a decrease in DCB's entity value. Without any information as to the exact items included in the write down and whether those items were improperly included in the write down in 2002, it is pure guess work at this point as to whether DCB has been damaged by any improper acts on the part of the directors. The conclusory allegations in the complaint are insufficient to demonstrate that DCB has sustained damages as the result of an improper write down. Thus, plaintiff has failed to satisfy the damages requirement for a derivative action.

Plaintiff has not met the requirements for maintaining a derivative action under Ohio law. The court agrees with defendants' argument that this action is not ripe. The fact that the complaint is replete with speculation about the reasons for the write down and the nature or propriety of the directors' actions or inaction "serves to highlight the fact that it is still unclear how ... events will play out, and that judicial intervention at this time would be premature[.]" *Brown*, 763 F.2d

at 802 (holding that shareholder derivative action was not ripe for decision as required by Article III of the Constitution due to failure to show that corporation sustained damages).

For the above reasons, plaintiff's derivative claims are subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Technically, defendants' challenge under Rule 12(b)(6) becomes moot if this court lacks subject matter jurisdiction. *Moir*, 895 F.2d at 269. However, in the interests of judicial economy, the court will also address defendants' arguments regarding the dismissal of the derivative claims under Rule 12(b)(6).

### III. *Misrepresentation Claim*

Under the heading of "material misrepresentation," plaintiff has alleged that the directors should have included the write down in DCB's 10–Q filing with the SEC. Plaintiff further alleges that material misrepresentations were contained in DCB's annual report to shareholders for the year 2001. Plaintiff notes three allegedly inconsistent statements in the report regarding the reason for the write down. Regardless of whether these statements could be construed as being inconsistent, plaintiff has not alleged that the corporation relied on these statements or sustained any loss because of that reliance.

Plaintiff has cited no authority for the proposition that the mere making of misrepresentations constitutes a tort under Ohio law. For example, a claim of fraud under Ohio law requires a knowing or reckless and material false statement, made with the intent to mislead, upon which the recipient of the statement justifiably relies, with a resulting injury proximately caused by the reliance. *See Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991). Even the tort of negligent misrepresentation requires justifiable reliance on false information provided in the course of a business transaction which results in pecuniary loss. *See Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).

Further, under Fed.R.Civ.P. 9(b) and Ohio Civ. R. 9(B), fraud must be pleaded with particularity. *Ullmo ex rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 678 (6th Cir.2001). Plaintiff alleges simply that the "assets of DCB have been jeopardized" as a result of these alleged misrepresentations. He does not allege that DCB or any agents of DCB reasonably relied on the statements contained in the DCB annual report, or that DCB sustained monetary damages as a result of its reliance on these statements. Plaintiff's misrepresentation claim does not state a cause of action under Ohio law.

Plaintiff contends for the first time in his memorandum contra the defendants' motion to dismiss that his claim of misrepresentation is a claim under § 13(a) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78m(a). That section requires issuers of securities to file certain reports and information with the SEC in accordance with SEC regulations. Aside from the fact that plaintiff made no reference to that provision in his complaint, there is no private cause of action for a violation of § 13(a). *See In re Penn Central Securities Litigation*, 494 F.2d 528, 539–41 (3d Cir.1974). Thus, plaintiff may not pursue a claim under § 13(a) on behalf of the corporation.

Plaintiff's claim of misrepresentation fails to state a claim under Ohio or federal law.

### IV. *Breach of Fiduciary Duty Claim*

Plaintiff's complaint includes a claim for alleged breach of fiduciary duty against the directors of DCB. Although plaintiff has brought this claim as a derivative

claim, the nature of the fiduciary duty which was allegedly breached is not clear. Plaintiff alleges in ¶¶ 34 through 36 of the complaint that the directors breached a fiduciary duty to the shareholders by failing to make full disclosure of the reasons for the write down, but then he alleges in ¶ 38 that *DCB* "has been damaged by having its entity value decreased in an amount to be determined after this Court compels a proper accounting of the Write Down."

 Corporations and their officers and directors occupy a fiduciary relationship with corporate shareholders. *See Thomas v. Matthews,* 94 Ohio St. 32, 113 N.E. 669 (1916); *Thompson v. Central Ohio Cellular, Inc.,* 93 Ohio App.3d 530, 540, 639 N.E.2d 462 (1994). However, actions for breach of fiduciary duties are generally brought in derivative suits. *Owens,* 86 Ohio App.3d at 220, 620 N.E.2d 234. This is because the right to maintain an action to recover for the alleged negligence, fraud, or misconduct of directors and officers, resulting in the depletion of the corporation property, belongs to the corporation itself. *Id.* A complaining shareholder has a direct action only if he is injured in a way that is separate and distinct from an injury to the corporation. *Weston,* 74 Ohio St.3d at 379, 658 N.E.2d 1058. Here, the only damage alleged is to DCB. Plaintiff has alleged no damages sustained by him or other shareholders which was distinct from the alleged injury to the corporation. Thus, the claim is derivative.

 In order to recover for a breach of fiduciary duty, the plaintiff must show the existence of a duty on the part of the alleged wrongdoer not to subject the corporation to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom. *McConnell v. Hunt Sports Enterprises,* 132 Ohio App.3d 657, 687, 725 N.E.2d 1193 (1999). Here, plaintiff summarily alleges that the

directors failed to properly disclose information concerning the reason for the write down. However, he does not allege that the write down was improper. He does no more than offer speculative possibilities as reasons for the write down. He alleges no facts showing that the write down resulted in a reduction of DCB's entity value. Plaintiff fails to allege facts showing how the directors' alleged concealment of information regarding the write down constituted a breach of fiduciary duty which resulted in injury to DCB. Plaintiff's complaint fails to state a claim for breach of fiduciary duty.

## V. Failure to Follow Accounting Procedures

Plaintiff alleges that the directors violated DCB's accounting procedures by failing to include the write down in DCB's 10–Q report filed with the SEC on November 14, 2001. Plaintiff also alleges that the directors disregarded DCB's accounting procedures by failing to recognize the losses comprising the write down in the periods in which they occurred. However, this is purely speculative, since plaintiff has not identified the items included in the write down, and therefore has alleged no facts demonstrating that these losses were not written off at the proper time.

 No basis for this claim under Ohio law has been identified by the plaintiff. However, plaintiff argues for the first time in his memorandum contra that this claim is being asserted under § 13(b) of the Act, 15 U.S.C. § 78m(b)(2), which requires issuers of securities to make and keep books and records which accurately and fairly reflect the transactions and dispositions of the assets of the issuer, and to devise and maintain a system of internal accounting controls. However, § 13(b) does not provide for a private right of action. *See Shields on Behalf of Sundstrand Corp. v.*

*Erickson,* 710 F.Supp. 686, 688 (N.D.Ill. 1989); *Eisenberger v. Spectex Industries, Inc.,* 644 F.Supp. 48, 50–51 (E.D.N.Y. 1986); *Lewis v. Sporck,* 612 F.Supp. 1316, 1332–33 (N.D.Cal.1985). Plaintiff's claim for failure to follow proper accounting procedures fails to state a claim for which relief may be granted.

*VI. Request for an Accounting*

 Plaintiff's fourth claim requests an accounting of the write down. "An action for an accounting seeks a determination by a court of what may be due the respective parties as a result of the relationship between them." *Moore v. Sweda,* 27 Ohio App.3d 38, 39, 499 N.E.2d 371 (1985). A claim for an accounting must set forth operative facts which, when construed in the plaintiff's favor, establish a right to the requested relief. *Fontbank, Inc. v. CompuServe, Inc.,* 138 Ohio App.3d 801, 814, 742 N.E.2d 674 (2000). A bare allegation that the plaintiff is entitled to receive an accounting without providing any legal basis therefore is not sufficient to state a claim. *Id.*

 Defendants are correct that plaintiff has not established how he personally would be entitled to an accounting. As a shareholder, plaintiff does not have a direct interest in the assets of DCB. A shareholder is the owner of intangible property, which is comprised of various relationships which are determined by the terms of the stock certificate, the articles and regulations of the corporation and the statutes and common law of the state of incorporation. *Millar v. Mountcastle,* 161 Ohio St. 409, 418, 119 N.E.2d 626 (1954). Thus, plaintiff's request for an accounting must be construed as a request for an accounting on behalf of DCB.

 A reading of the complaint indicates that plaintiff's concept of an accounting is broader than the above definition of an accounting claim. Plaintiff's claim for an accounting is in essence another request for an explanation of the write down. Plaintiff alleges in his complaint that an accounting "must occur to determine the extent to which DCB's financial assets have been wrongfully depleted by the concealment of the data" concerning the write down by Larry Coburn, president of DCB, and the other directors. Complaint, ¶¶ 45–46. Plaintiff alleges that he and other shareholders "have suffered and will continue to suffer irreparable harm from the acts of Defendants unless Defendants are forced to account for their actions." Complaint, ¶ 48. However, plaintiff does not allege that any of the directors or any other persons improperly embezzled, appropriated or took possession of funds belonging to DCB, so as to entitle DCB to an accounting to determine what funds are due to DCB from the directors or other persons. Plaintiff's complaint does not allege what items were included in the write down, nor does plaintiff allege that the expenditures reflected in the write down were in any way improper or involved funds which belong to DCB. Plaintiff's complaint fails to allege facts sufficient to show that DCB or the shareholders of DCB are entitled to an accounting.

*VII. Claim under Ohio Rev.Code § 1701.37(C)*

Plaintiff has also asserted a claim requesting injunctive relief mandating the enforcement of his right pursuant to Ohio Rev.Code § 1701.37(C) to inspect DCB's books and records. That section provides in part:

(C) Any shareholder of the corporation, upon written demand stating the specific purpose thereof, shall have the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose, the articles of the corporation, its regulations, its books and records of account, min-

utes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof.

Defendants argue that since plaintiff has failed to meet the requirements for pursuing his derivative claims, his remaining claim under § 1701.37(C) is insufficient to sustain diversity jurisdiction under 28 U.S.C. § 1332 because plaintiff cannot meet the $75,000 in controversy requirement on the basis of this claim alone.

 The determination of the value of the matter in controversy for the purpose of federal jurisdiction is made through the application of federal standards. *Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 352, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). However, in a diversity case, the court is required to look to state law to determine the nature and extent of the damages to be awarded. *Id.* at 352–53, 81 S.Ct. 1570. Thus, the court must apply the forum state's rules regarding the measure of damages.

 Where injunctive relief is requested, the value of the relief for purposes of the amount in controversy requirement is the value of the object of the litigation measured from the plaintiff's perspective, that is, the monetary value of the benefit that would flow to the plaintiff if the injunction were granted. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir.2000); *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 218–20 (11th Cir.1997); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 260 (E.D.Mich.2001).

 In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount. *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir.1990). Where a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith, that is, if it appears, to a legal certainty, that the original claim was really for less than the amount-in-controversy requirement. *Gafford v. General Electric Co.*, 997 F.2d 150, 157 (6th Cir.1993).

However, this liberal standard for jurisdictional pleading "is not a license for conjecture." *Morrison*, 228 F.3d at 1268.

In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction[.] . . . We think this obligation requires a court to insure that the benefits resulting from an injunction are not counted where they are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds $75,000. Accordingly, a plaintiff who bases diversity jurisdiction on the value of injunctive relief must show that the benefit to be obtained from the injunction is "sufficiently measurable and certain to satisfy the . . . amount in controversy requirement. . . ." *Ericsson*, 120 F.3d at 221.

*Id.* (Footnote omitted). In *Ericsson*, the court held that the injunctive relief sought by the plaintiff, namely, the chance to rebid for a government contract, was too speculative and immeasurable to satisfy the amount in controversy requirement. 120 F.3d at 221–22.

In this case, plaintiff seeks an injunction enforcing his right under § 1701.37(C) to inspect DCB's books and records for information concerning the write down. Section 1701.37(C) is enforceable by injunction, and contains no provision authorizing

money damages for noncompliance. Thus, even if plaintiff prevails on his § 1701.37(C) claim, the most he will receive is an order directing the defendants to submit DCB's records for inspection.

Defendants rely on *Whitney v. American Shipbuilding Co.*, 197 F. 777 (N.D.Ohio 1911). In that case, the court noted that, in order to satisfy the amount in controversy requirement, the matter in dispute must be money or some right whose monetary value could be calculated and ascertained. *Id.* at 780 (citing *Barry v. Mercein*, 46 U.S. 103, 120, 5 How. 103, 12 L.Ed. 70 (1847)). *See also Kurtz v. Moffitt*, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458 (1885). The court found that a shareholder's right under Ohio law to inspect corporate books could not be measured in money, and, therefore, the court could not exercise jurisdiction. *Id.*

As the Ninth Circuit noted in *Whittemore v. Farrington*, 234 F.2d 221, 225 (9th Cir.1956), it "has long been settled that the requirements of statutes predicating federal jurisdiction on the presence of a specified amount or value in controversy are not met by claims for relief not reducible to monetary statement[.]" In that case, the court held that the relief sought, that being the disqualification of a state court judge in an action for the appointment of a successor trustee, did not meet the jurisdictional requirement even though the value of the trust exceeded $500,000, since the right to have an impartial judge rule on petitioner's request to be appointed a cotrustee of the trust could not be measured in terms of dollars. *See also Amen v. City of Dearborn*, 532 F.2d 554, 559–60 (6th Cir.1976)(right to reside in predominantly Arab Moslem neighborhood was incapable of monetary valuation and could not support jurisdictional amount).

Plaintiff contends that the amount of the write down, namely, $1.44 million, should be considered as the amount in controversy. However, plaintiff has not alleged in his complaint that the write down was improper. He does not even identify what items are included in the write down. The allegations in the complaint do not put the write down itself in issue. If plaintiff prevailed on his claim under § 1701.37(C), he would not be entitled to a money judgment in the amount of the write down. He would only be entitled to inspect DCB's books and records.

Plaintiff also argues that the value of his shares, which he claims exceeds $75,000, satisfies the amount in controversy requirement. Plaintiff relies on cases such as *Rockwell v. SCM Corp.*, 496 F.Supp. 1123 (S.D.N.Y.1980), in which inspection of shareholder lists was sought for use in a proxy fight. *See also Rosen v. Alleghany Corp.*, 133 F.Supp. 858 (S.D.N.Y. 1955)(amount in controversy was value of plaintiffs' stock where plaintiffs sought to examine corporate stock list in proxy battle); *Textron, Inc. v. American Woolen Co.*, 122 F.Supp. 305 (D.Mass.1954)(value of shares satisfied jurisdictional amount where plaintiff engaged in proxy fight sought control or partial control of corporation).

This action does not involve a proxy fight. Plaintiff does not allege that he seeks to increase the number of his shares, or that he seeks to gain control of DCB. He has pleaded no specific facts which would indicate that the write down was improper or that it affected the value of his shares. The value of plaintiff's shares are not placed at issue in the complaint. Only the enforcement of the right to inspect is requested.

 The court concludes that plaintiff's right to inspect corporate documents under § 1701.37(C) cannot be assigned a monetary value in this case. Plaintiff is not entitled to any monetary damages under Ohio law in conjunction with the en-

forcement of his rights under § 1701.37(C). Plaintiff has asserted no other individual claims which could potentially lead to an award of money damages. The remaining claims in his complaint were asserted as derivative claims, and any monetary damages on those claims would be awarded to the corporation. As noted above, plaintiff has not alleged in the complaint that the write down was improper, and has not even alleged what was actually included in the write down. Rather, he merely speculates as to what items may have been included. Whether inspection of the corporate records would lead in the future to any benefit to plaintiff in the form of an increase in the value of his shares is "too speculative and immeasurable to satisfy the amount in controversy requirement." *Ericsson*, 120 F.3d at 221–22.

It appears to a legal certainty in this case that the plaintiff in good faith cannot claim the jurisdictional amount for his claim under § 1701.37(C). The claim under § 1701.37(C) cannot be the basis for this court's exercise of diversity jurisdiction.

Even if the court were to find that the jurisdictional amount is satisfied in this case, the allegations in the complaint are insufficient to state a claim for equitable relief under § 1701.37(C). Plaintiff did not allege in his complaint that he was denied all access to DCB's books and records. Rather, he alleges that he was denied access at the time of his choosing. In ¶ 15 of the complaint, he alleges that the board did not respond to his letter of May 31, 2002, requesting information regarding the write down by June 6, 2002, a mere week later. He also alleges that he sent a letter dated June 13, 2002, to the board stating that his accountants would conduct an inspection on June 18, 2002, a mere five days later, but that the accountants were denied access to the records on that date. Complaint, ¶¶ 15, 52. Section 1701.37(C) pro-

vides for a right of inspection, but only "at any reasonable time and for any reasonable and proper purpose." Plaintiff does not allege in the complaint that the deadlines he set on disclosure of this information were reasonable under the circumstances.

*VIII. Conclusion*

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is granted, and this case is dismissed without prejudice. The clerk shall enter final judgment in favor of the defendants dismissing plaintiff's complaint without prejudice at plaintiff's costs.

It is so ordered.