*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

In re:     FERRO CORPORATION
             DERIVATIVE LITIGATION

—————————————————

THOMAS AULETTA; BARBARA BENCOSME; PHILLIP
MILLER TRUST, Derivatively on Behalf of Nominal
Defendant,

                  *Plaintiffs-Appellants,*

SAM WIETSCHNER,

                  *Plaintiff,*

     *v.*

HECTOR R. ORTINO, et al.,

                  *Defendants-Appellees.*

Nos. 06-3816/3817

—————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 04-01626; 04-01627; 04-02120; 04-02121—
John M. Manos, District Judge.

Argued: June 6, 2007

Decided and Filed: January 7, 2008

Before: MARTIN, BATCHELDER, and CLAY, Circuit Judges.

—————————

## COUNSEL

**ARGUED:** Matthew R. Chasar, STRAUSS & TROY, Cincinnati, Ohio, for Appellants. Thomas S. Kilbane, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, for Appellees. **ON BRIEF:** Matthew R. Chasar, Richard S. Wayne, STRAUSS & TROY, Cincinnati, Ohio, Nadeem Faruqi, FARUQI & FARUQI, New York, New York, Brian J. Robbins, ROBBINS, UMEDA & FINK, San Diego, California, for Appellants. Thomas S. Kilbane, Steven A. Friedman, Joseph C. Weinstein, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, for Appellees.

---
## OPINION
---

ALICE M. BATCHELDER, Circuit Judge. In this shareholder derivative action, plaintiffs Thomas Auletta, Barbara Bencosme, and Phillip Miller Trust (collectively "Plaintiffs") appeal the district court's dismissal of their complaint for failing to allege, with adequate particularity, that a demand would be futile, and the district court's denial of their Rule 60(b) Motion for Relief from the Judgment. Because the district court neither erred in dismissing Plaintiffs' complaint nor abused its discretion in denying Plaintiffs' motion for relief, we affirm the district court's decisions in their entirety.

## I. BACKGROUND

Plaintiffs brought suit on behalf of nomimal defendant Ferro Corporation ("Ferro") against Ferro Vice President and Chief Financial Officer, Thomas M. Gannon, Ferro Vice President of Performance Chemicals, Dale G. Kramer, and the individual members of Ferro's Board of Directors ("Board"), namely, Hector R. Ortino[1], Michael H. Bulkin, Michael F. Mee, William J. Sharp, Alberto Weisser, Sandra Austin Crayton, Jennie S. Hwang, William B. Lawrence, Dennis W. Sullivan, and Padmassree Warrior (collectively "Defendants").[2]

Ferro, an Ohio corporation, produces performance materials for a broad range of manufacturers, which serve diverse markets worldwide. In Fiscal Year ("FY") 2003, Ferro reported sales of $1.6 billion. From April 2003 to April 2004, Ferro announced quarterly increases in sales over preceding years. During this time period, however, Ferro's Performance Chemicals segment, including its Polymer Additives business, suffered due to low demand and high raw material costs. In February 2004, Defendant Ortino announced that Ferro had successfully implemented price increases to offset the increasing costs of raw materials and substantially reduced costs and discretionary spending. In April 2004, Ferro reported a 12.4% revenue increase for first quarter 2004 compared to first quarter 2003. In the Performance Chemicals division, Ferro reported an 8.2% revenue increase, which it attributed to increased demand and pricing.

In July 2004, Ferro unexpectedly announced that it would have to lower its earnings expectations for second quarter 2004 by more than 70% due to inappropriate accounting entries. Ferro's shortfall resulted largely from the poor performance of its Polymer Additives business, requiring Ferro to take a non-cash charge to earnings to remedy the inappropriate accounting entries. Ferro discovered the accounting entries through an internal investigation and stated that it had engaged independent legal counsel (Jones Day) and independent auditors (Ernst & Young) to investigate the accounting entries.

In early August 2004, plaintiffs Auletta and Bencosme filed separate shareholder derivative suits in federal court against Ferro's Board and its Vice President and Chief Financial Officer, raising breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment claims. About a month later, plaintiffs Wietschner and Phillip Miller Trust filed separate shareholder derivative suits in state court against Ferro's Board and its Vice President

---

[1] Mr. Ortino died on November 28, 2005. Plaintiffs' motion to substitute Mr. Ortino's estate was pending at the time the district court dismissed the complaint.

[2] Plaintiffs' consolidated complaint also raises breach of contract, professional negligence, and accounting malpractice claims against KPMG, LLP, which served as Ferro's auditor during the relevant time period. This appeal pertains to Ferro itself and the individual employees and board members named in the complaint.

and Chief Financial Officer, alleging breach of fiduciary duty based upon Defendants' failure to comply with federal securities regulations. The state suits were removed to federal court on the basis of federal question jurisdiction. None of the plaintiffs made a demand on the Board before filing suit.

A day after the state suits were filed, on September 15, 2004, Ferro issued a press release revealing that the Securities Exchange Commission ("SEC") had also initiated an investigation into the inappropriate accounting entries. Then, in November 2004, Ferro announced that it would restructure the Polymer Additives business, at a cost of $2.1 million.

The independent investigation undertaken by Jones Day and Ernst & Young revealed that the accounting irregularities dated back to FY2001 and extended beyond the Polymer Additives business. Initially, Ferro concluded that the irregularities stemmed from the actions of a single employee, but the investigation later identified additional likely instances and sources of inappropriate accounting. In January 2005, Ferro disclosed that it would restate its FY2003 financial statements and its first quarter 2004 financial statements.

In April 2005, Ferro announced that its auditor, KPMG, could not conclude that the independent investigation by Jones Day and Ernst & Young was adequate for its purposes. Instead of proceeding with the investigation or initiating a new one, Ferro's Audit Committee decided to "engage an independent firm specializing in investigations to review the original investigative team's procedures and conclusions."

On July 11, 2005, Plaintiffs submitted an amended consolidated complaint, raising essentially the same claims presented in their individual suits, i.e., violations of the Sarbanes-Oxley Act of 2002 and breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment claims. Defendants filed a motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting, *inter alia*, that Plaintiffs did not have standing to bring a derivative action because they did not first make a demand on Ferro, nor did Plaintiffs sufficiently allege that their failure to make a demand was excused because a demand would have been futile. The district court dismissed Plaintiffs' case, without prejudice, and Plaintiffs filed a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure essentially asking the district court to reopen the case, permit them to conduct limited discovery on the issue of futility of a demand, and then, depending on the fruits of the discovery, submit an amended complaint to the court. The district court denied Plaintiffs' motion. Plaintiffs timely appealed both the dismissal of their complaint and denial of their Rule 60(b) motion.

## II. JURISDICTION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. "'Where the district court dismisses an action without prejudice, . . . the order is final and appealable.'" *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007) (quoting *Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001)) (alteration omitted). "A dismissal of the complaint," however, "is ordinarily a non-final, nonappealable order (since amendment would generally be available)." *Mobley v. McCormick*, 40 F.3d 337, 339 (10th Cir. 1994). Here, because the district court dismissed Plaintiffs' action and not just the complaint, we have jurisdiction to consider this appeal.

## III.  ANALYSIS

### A.  Rule 12(b)(6)

We review *de novo* the district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Daubenmire v. City of Columbus*, 507 F.3d 383, 387 (6th Cir. 2007); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).  When determining whether to grant a motion to dismiss pursuant to Rule 12(b)(6), the "district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).  "A district court need not, however, accept as true legal conclusions or unwarranted factual inferences." *Id.*

"In a shareholder derivative action, [Federal Rule] 23.1 [of the Federal Rules of Civil Procedure] requires that the plaintiff 'allege with particularity' the reasons for failing to make a pre-suit demand." *McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001).  Even when the derivative claims are brought under federal law, we apply the substantive law of the state of incorporation, here Ohio, to determine whether Plaintiffs' failure to make a demand is excused. *Id.* ("[T]he Supreme Court made clear in *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 108-09, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991), that whether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation.").  Ohio's Rules of Civil Procedure and Federal Rule 23.1 contain the same requirement:

> In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, . . . . [t]he complaint shall *also allege with particularity* the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and *the reasons for his failure to obtain the action or for not making the effort*.

OHIO CIV. R. 23.1 (emphasis added).  If Plaintiffs do not comply with the requirements of Rule 23.1, they do not have standing to bring suit. *See Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003) (citing *Grand Council of Ohio v. Owens*, 620 N.E.2d 234, 239 (Ohio Ct. App. 1993)).

In Ohio, the "directors of a corporation are charged with the responsibility of making decisions on behalf of the corporation and are the proper parties to bring a suit on behalf of the corporation or, in their business judgment, to forego a lawsuit." *Drage v. Proctor & Gamble*, 694 N.E.2d 479, 482 (Ohio Ct. App. 1997).  "Under Ohio law, it is presumed that any action taken by a director on behalf of the corporation is taken in *good faith and for the benefit of the corporation*." *Id.* (citing OHIO REV. CODE § 1701.59(C)(1)) (emphasis added).  Because the "board of directors has the primary authority to file a lawsuit on behalf of the corporation," the shareholders "may make a demand on the directors to bring a suit on behalf of the corporation, but no shareholder has an independent right to bring suit unless the board refuses to do so *and* that refusal is wrongful, fraudulent or arbitrary, or is the result of bad faith or bias on the part of the directors." *Id.*

> The demand requirement is essentially a requirement that the shareholder exhaust his or her intracorporate remedies before going to court with a derivative suit.  The corporate management must be given the first opportunity to institute the litigation since, as a general principle, the responsibility for determining whether a corporation should use the courts to enforce a cause of action is, like other business questions, ordinarily a matter of internal management left to the discretion of the directors.

*Carlson v. Rabkin*, 789 N.E.2d 1122, 1128 (Ohio Ct. App. 2003) (footnotes omitted).

Ohio recognizes an exception to the general demand rule, which permits a shareholder to proceed with an independent suit without making a demand when the shareholder can demonstrate that the demand would have been futile. *Id.* Plaintiffs carry the burden of showing that "the directors cannot exercise independent, unbiased judgment when determining whether to sue themselves." *Id.* at 1128-29.

"Futility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Id.* at 1128 (citation and internal punctuation omitted). Ohio law presumes "that directors can make an unbiased, independent business judgment about whether it would be in the corporation's best interests to sue some or all of the other directors. Thus, courts have consistently rejected the idea that demand is always futile when the directors are targeted as the wrongdoers in the suit the shareholders wish the corporation to bring." *Drage*, 694 N.E.2d at 483.

"Merely alleging futility will not suffice; rather, in accordance with Rule 23.1, plaintiff must state with particularity the reasons for circumventing the demand requirement." *Granada Invs., Inc. v. DWG Corp.*, 717 F. Supp. 533, 536 (N.D. Ohio 1989) (internal citations omitted). That is, "the plaintiff must *point to facts* which show that the presumed ability of the directors to make unbiased, independent business judgments about whether it would be in the corporation's best interests to file the action does not exist in this case." *Davis*, 259 F. Supp. 2d at 670 (citing *Drage*, 694 N.E.2d at 482-83) (emphasis added). "Broad, generalized and conditional statements . . . do not constitute facts pleaded with particularity." *In re Xcel Energy, Inc.*, 222 F.R.D. 603, 607 (D. Minn. 2004).

Ohio courts have found a demand presumptively futile "where the directors are antagonistic, adversely interested, or involved in the transactions attacked." *Bonacci v. Ohio Highway Express, Inc.*, No. 60825, 1992 Ohio App. LEXIS 3940, at *9 (Ohio Ct. App. July 30, 1992) (internal punctuation and citation omitted). Likewise, for example, a demand may also be excused "when all directors are named as wrongdoers and defendants in a suit, when there is self-dealing by the directors such that the directors gain directly from the challenged transactions, or when there is domination of nondefendant directors by the defendant directors." *Carlson*, 789 N.E.2d at 1128.

Here, the bulk of Plaintiffs' allegations of futility could apply to *any* board of directors at *any* corporation. In essence, and despite Plaintiffs' efforts to package their allegations otherwise, they assert that a pre-suit demand would have been futile because the directors do not want to sue themselves or expose themselves to liability (in order to, for example, protect their compensation packages, to curtail their exposure to liability, to prevent a suit against their friends and colleagues). And as the district court correctly held, in Ohio, "a bare allegation that the directors would not want to sue themselves or each other does not show that demand would be futile." *Drage*, 694 N.E.2d at 483.

The district court did find that Plaintiffs established that a pre-suit demand would be futile as to three members of the Board: Ortino[3], because he allegedly committed insider trading, and Weisser and Mee, because these men had specialized financial expertise and "should have been able to monitor Ferro's financial records for accuracy and fairness." Demonstrating futility as to three board members out of ten, however, does not establish futility as to the Board. *McCall*, 239 F.3d at 818 n.10 ("In the context of determining demand futility . . . the issue is whether the particularized

---

[3] The district court found that because Ortino was deceased, "any alleged self-dealing on his part is irrelevant to the question of whether the remaining individual Defendants can exercise independent judgment." But Ortino was alive at the time Plaintiffs commenced their respective suits (August 13, 2004, and September 14, 2004). Ortino's alleged self-dealing is therefore relevant because futility is measured at the time plaintiffs bring suit. *Drage*, 694 N.E.2d at 483 ("The weight of authority establishes that the futility of demand must be determined by looking at the positions of the parties when the derivative suit is initially filed.").

factual allegations are sufficient to create doubt about the disinterestedness and independence of a *majority* of the directors.") (emphasis added).

On appeal, Plaintiffs raise a number of arguments. First, Plaintiffs argue that the district court applied the wrong standard to determine whether the complaint presented particularized allegations excusing a demand. Plaintiffs assert that they are required to allege "with particularity facts that would create only a *reasonable certainty* that a majority of the defendant Board members are not independent or disinterested with respect to the subject matter of the suit." (Emphasis added). Plaintiffs, however, cite to only one Ohio case where an Ohio court applied a "reasonable certainty" standard. *See Jensen v. Republic Steel Corp.*, 32 Ohio Law Abs. 29 (Ohio Ct. Com. Pl. 1940). Based on our review of Ohio case law, we think it is safe to say that *Jensen* is the *only* Ohio case that applies the "reasonable certainty" standard. Moreover, *Jensen* pre-dates Federal Rule 23.1 and Ohio Rule 23.1. The district court did not err in looking to more recent, published Ohio Court of Appeals decisions for guidance on how to determine whether Plaintiffs sufficiently alleged futility.

Second, Plaintiffs argue that the district court required them to "prove", "establish" or "demonstrate" futility and that this was a higher than necessary burden. Plaintiffs' argument is without merit. Regardless of how the district court characterized the futility requirement, it did no more than apply Federal Rule 23.1 and Ohio Rule 23.1, both of which require Plaintiffs to plead, with sufficient particularity, factual allegations that provide some sort of indication that a demand should be excused here because it would have been futile.

Third, Plaintiffs assert that the district court failed to consider their well-pleaded allegations in the light most favorable to them. Specifically, Plaintiffs insist that the facts and reasonable inferences therefrom establish "a pattern of conduct by Ferro to downplay and cover-up the true extent of the accounting problems and their impact on the Company's financial performance." Plaintiffs argue that the district court ignored the following facts:

- Defendant Ortino's July 23, 2004, announcement that inappropriate accounting in the Polymer Additives business would cause the company to take a second quarter charge

- Ferro's and Ortino's follow up assurances on September 15, 2004, that the investigation was over and that all inappropriate accounting entries were corrected

- Ferro's January 18, 2005, update to its completed investigation that the company would need to restate financial information from FY2001, 2002, 2003, and the first quarter of FY2004, and its admission that it had only recently spoken to the alleged wrongdoer (six months after first admitting accounting problems)

- Ferro's April 21, 2005, announcement that investigators had now interviewed more than 50 former and current employees (contrary to Ferro's representations that only one employee was responsible for the accounting irregularities) and had identified additional instances of inappropriate accounting

- KPMG's statement on April 21, 2005, that despite the findings and conclusion of the independent investigation, KPMG was unable to conclude that the investigation was adequate for its purposes; the Audit Committee's rejection of KPMG's recommendation that Ferro hire another independent investigation team to further investigate transactions; and the Audit

Committee's decision to a hire a new investigation team merely to review the actions of the original independent investigation team and not continue to investigate.

- The Audit Committee's involvement—announced on April 21, 2005— in the investigation from its inception in July 2004

- The required due diligence investigation by board members to assure compliance with the requirements of proxy statements and SEC Forms 10-K, which specifically state that the financial condition being presented is accurate in all material aspects and that the company has effective disclosure controls and procedures

- The Board's knowledge or presumed knowledge of the cover-up because the Polymer Additives business is very important to Ferro's overall financial health—the business comprised 33% of Ferro's total revenues in 2003.

Plaintiffs argue that these facts, at the very least, demonstrate that Ortino made false statements regarding the investigation and that Ferro's Audit Committee (which comprises four board members) rejected the findings of KPMG, Ferro's auditor, even though KPMG expressed concern that the original investigation was insufficient, thereby establishing that five of the ten board members' "minds were closed to argument."

As Defendants point out, however, "futility of demand must be determined by looking at the positions of the parties when the derivative suit is initially filed." *Drage*, 694 N.E.2d at 483; *see also Grossman v. Johnson*, 674 F.2d 115, 123 (1st Cir. 1982) ("'The futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight.'" (quoting *Cramer v. General Tel. & Elecs. Corp.*, 582 F.2d 259, 276 (3d Cir. 1978)); *Abrams v. Koether*, 766 F. Supp. 237, 255 (D.N.J. 1991) ("Demand futility is determined as of the time the complaint was filed."). "After a suit is filed, the directors may take action in their defense that could be construed as contrary to the claims of the shareholders, but that might not have been taken if a suit had not been filed." *Drage*, 694 N.E.2d at 483.

The majority of Plaintiffs' allegations relate to conduct that occurred *after* they filed their original complaints (on August 13, 2004, and September 14, 2004). At the time Plaintiffs commenced their respective actions against Defendants, they knew that (1) the Polymer Additives business comprised 33% of Ferro's total revenues in 2003; (2) Ferro would have to lower its earnings expectations for second quarter 2004 by more than 70% due to inappropriate accounting entries in its Polymer Additives business; (3) Ferro had engaged an independent auditor and law firm to investigate the accounting entries; and (4) the individual board members signed and approved Ferro's annual reports. Taking these facts and reasonable inferences in the light most favorable to Plaintiffs, we are at a loss to see how the facts alleged demonstrate a cover-up by the Board.

Additionally, as the district court concluded, Plaintiffs failed to allege "any particular facts whatsoever to establish what roles, if any, the individual defendants had in causing and/or covering up the accounting irregularities." *See also Davis*, 259 F. Supp. 2d at 671 (demand not excused where plaintiff did "not identify what role, if any, that the individual board members had in the [misconduct]"); *In re Goodyear Tire & Rubber Co. Derivative Litig.*, Nos. 5:03CV2180, 5:03CV2204, 5:03CV2374, 5:03CV2468, and 5:03CV2469, 2007 U.S. Dist. LEXIS 1233, at *18 (N.D. Ohio Jan. 5, 2007) ("[T]hese allegations, like those in the remainder of the Complaint, are highly generalized and provide no specific facts indicating a nexus between any individual committee member and any inappropriate action or failure to act"). In short, "[m]issing from the

. . . complaint are any particularized facts that link a majority of the directors to any concerted board action." *In re Xcel Energy, Inc.*, 222 F.R.D. at 607.

Even the fact that individual Defendants signed and approved Ferro's annual reports does not mean that they had actual knowledge of the accounting errors contained within the reports. Moreover, "bald charges of mere failure to take corrective action are . . . inadequate to demonstrate futility." *Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir. 1983); *see also Drage*, 694 N.E.2d at 486 ("allegations in appellant's amended complaint of the nondefendant directors' acquiescence, even if true, do not state with particularity a reason that demand upon the nondefendant directors would be futile.").

Fourth, Plaintiffs argue that the district court erred because it failed to consider their allegations cumulatively. But the district court's opinion plainly states that "[a]lthough the aforementioned allegations, *whether considered individually or collectively*, might be sufficient under a notice pleading standard, they are insufficient to excuse demand under the particularity requirement, which differs substantially from the principles of notice pleading." (Emphasis added). A review of the district court's opinion gives us no reason to believe that the district court did not in fact consider Plaintiffs' allegations in the aggregate.

Finally, Plaintiffs argue that the district court erred in rejecting the insured-versus-insured exclusion as a basis for excusing a demand. Under this theory, a demand would be futile because the individual Defendants would be forced to abrogate their insurance coverage if they brought an action against themselves. The only Ohio court to address this issue stated that,

> [c]ertainly, a provision prohibiting directors from bringing suits against each other would deprive the directors "of the ability to exercise independent judgment as to the advisability of instituting action against any officer or director for mismanagement, and thereby [divest them] of the power to govern this aspect of the corporation's affairs."

*Drage*, 694 N.E.2d at 484 (quoting *Grill v. Hoblitzell*, 771 F. Supp. 709, 713 (D. Md. 1991)).

The district court concluded, however, that this statement was dicta and declined to follow it. *See also In re Goodyear Tire & Rubber Co. Derivative Litig.*, 2007 U.S. Dist. LEXIS 1233, at *19-20 (also rejecting this statement as dicta for the same reasons set forth by the district court in the instant case). Specifically, it was unclear in *Drage* whether the insurance policy actually prohibited the *Drage* directors from bringing suit, and the court ultimately found that the plaintiff did not plead futility of a demand. Moreover, the district court correctly noted that none of the three cases the *Drage* court relied upon regarding this statement remains good law.

Additionally, several state and federal courts have rejected the idea that insured-versus-insured exclusions excuse a demand. For instance, "Delaware courts have rejected claims that an 'insured vs. insured' exclusion in the directors' and officers' insurance policy . . . is sufficient to establish demand futility." *In re Discovery Labs. Derivative Litig.*, 242 F.R.D. 333, 337 (E.D. Pa. 2007) (citing *Orloff v. Shulman*, No. 852-N, 2005 Del. Ch. LEXIS 184, at *50-51 (Del. Ch. Nov. 23, 2005)); *see also Decker v. Clausen*, Nos. 10,684, 10,685, 1989 Del. Ch. LEXIS 143, at *8 (Del. Ch. Nov. 6, 1989); *Stepak ex rel. S. Co. v. Addison*, 20 F.3d 398, 411 (11th Cir. 1994) (citing *Decker* for the proposition that "an allegation of insured v. insured liability exclusion is but a variation on the directors suing themselves refrain"); *Spector v. Sidhu*, No. 3:03-CV-0841-H, 2004 U.S. Dist. LEXIS 876, at *15 (N.D. Tex. Jan. 26, 2004) ("Many courts have found the mere existence of [an insured-versus-insured exclusion] clause, without more, to be insufficient to excuse demand."); *Stoner v. Walsh*, 772 F. Supp. 790, 805 (S.D.N.Y. 1991) ("Plaintiff's assertion that the exclusion

automatically renders a board member 'interested' with respect to a decision to reject demand finds no support in either case authority or logic.").

The district court also concluded that the insured-versus-insured-exclusion argument was just another variation of the "demand is futile because the directors would not want to sue themselves" argument — an argument which Ohio courts have soundly rejected. *See*, *e.g.*, *Drage*, 694 N.E.2d at 483; *Carlson*, 789 N.E.2d at 1128; *Doe v. Malkov*, No. 02AP-90, 2002 Ohio App. LEXIS 7297, at *13-14 (Ohio Ct. App. Dec. 31, 2002); *see also Davis*, 259 F. Supp. 2d at 670. Moreover, as a practical matter, "routine excuse of demand based on the existence of such standard exclusions would eviscerate the demand requirement." *In re Prudential Ins. Co. Derivative Litig.*, 659 A.2d 961, 973 (N.J. Super. Ct. Ch. Div. 1995). We agree with the district court's conclusion that if the Ohio Supreme Court were to address this issue, it would not follow *Drage*'s dicta.

Plaintiffs cite to *In re FirstEnergy Shareholder Derivative Litigation*, 320 F. Supp. 2d 621 (N.D. Ohio 2004), in which the court, relying in part on *Drage*, concluded that the insured-versus-insured-exclusion clause in the directors' insurance policy rendered a demand futile because of the potential personal liability the directors faced. The court reasoned that if the directors brought suit against themselves, the suit could adversely impact the directors' defenses in other related criminal investigations and civil suits. 320 F. Supp. 2d at 625. For the reasons stated above, however, we find that the insured-versus-insured exclusion does not excuse a demand.

For the foregoing reasons, we hold that Plaintiffs failed to meet the pleading requirements of Federal Rule 23.1 and Ohio Rule 23.1.

## B. Rule 60(b)

We review for abuse of discretion the district court's denial of a Rule 60(b) motion. *Johnson v. Dellatifa*, 357 F.3d 539, 542 (6th Cir. 2004). A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact. *See Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001); *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997).

In Plaintiffs' Rule 60(b)(6) motion, they sought (1) relief from the district court's judgment dismissing their derivative suit, (2) permission to conduct limited discovery on the issue of demand futility, and (3) leave to amend their consolidated complaint. In essence, Plaintiffs wanted a second bite at the demand-futility apple, having had the benefit of the district court's opinion as to the shortcomings of their pleadings.

Rule 60(b)(6), as it existed at the time, provided that a party may seek, upon motion and "such terms as are just," relief from judgment for "any other reason [beyond those found in 60(b)(1)-(5)] justifying relief from the operation of the judgment."

> However, relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation. This is especially true in an application of subsection (6) of Rule 60(b), which applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. This is because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b). Consequently, courts must apply Rule 60(b)(6) relief only in unusual and extreme situations where principles of equity mandate relief.

*Blue Diamond Coal*, 249 F.3d at 524 (internal punctuation and citations omitted).

The district court found that Plaintiffs failed to proffer any "exceptional or extraordinary" circumstances, which would justify relief under Rule 60(b)(6). Before the district court, Plaintiffs altogether failed to discuss the actual judgment from which they sought relief. On appeal, they likewise fail to address how the district court erred in its refusal to grant Rule 60(b)(6) relief. Instead, Plaintiffs focus on their efforts to obtain additional discovery and leave to amend their complaint.

Plaintiffs wholly fail to appreciate that because the district court dismissed this action, the court must first reopen their case in order to grant leave to conduct discovery or permit them to submit an amended complaint. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002); *see also Nat'l Petrochemical Co. v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991) ("once judgment is entered[,] the filing of an amended complaint is not permissible until judgment is set aside or vacated  pursuant to Fed. R. Civ. P. 59(e) or 60(b)") (internal punctuation and citation omitted)); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 174 F.R.D. 444, 446 (E.D. Mo. 1997) ("A complaint cannot be amended after dismissal unless the court first re-opens the judgment under Rule 59 or 60, and then determines that amendment is warranted."). That is, "[u]nless postjudgment relief is granted, the district court lacks power to grant a motion to amend the complaint under Rule 15(a) [of the Federal Rules of Civil Procedure]." *Acevedo-Villalobos v. Hernandez*, 22 F.3d 384, 389 (1st Cir. 1994). As it stands, Plaintiffs do not have a live case or controversy pending before the district court. Plaintiffs must first meet the threshold requirement of 60(b)(6)'s extraordinary or exceptional circumstances to vacate the judgment before seeking to conduct discovery on the demand-futility issue or submit amended pleadings.

Critically, Plaintiffs are unable to point to anything they would plead in an amended complaint that would justify granting 60(b)(6) relief. Instead, as Defendants argue, "[Plaintiffs] urged the District Court to allow them to *begin* Rule 26 discovery to see *if* they *might* be able to uncover facts that *might* bolster" their demand futility allegations. Specifically, Plaintiffs sought discovery to determine *whether or not* facts exist that establish "which documents, conversations, employees, meetings or reports were involved in Defendants' failure to maintain internal financial controls," and ultimately, "whether or not [Plaintiffs] can remedy the deficiencies noted by the Court."

Finally, this case was pending for 18 months before the district court dismissed the derivative action. Plaintiffs had the opportunity to obtain leave to conduct discovery and/or submit an amended complaint during that period. The fact that they failed to do so at an appropriate time does not constitute the exceptional circumstances for which a court grants 60(b)(6) relief. The district court did not abuse its discretion in denying the 60(b)(6) motion for relief.

## IV.  CONCLUSION

Accordingly, we **AFFIRM** the judgments of the district court.