## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF OHIO.

## DECEMBER TERM, 1862.

---

Hon. MILTON SUTLIFF, Chief Justice.
Hon. WILLIAM V. PECK,
Hon. WILLIAM Y. GHOLSON,
Hon. JACOB BRINKERHOFF,    } Judges.
Hon. JOSIAH SCOTT,

---

DANIEL WADSWORTH ET AL. *v.* ALFRED DAVIS, RECEIVER OF THE MEDINA COUNTY MUTUAL FIRE INSURANCE COMPANY.

Suit was brought by the Medina County Mutual Fire Insurance Company to recover the amount of a certain assessment made upon the premium notes of the plaintiffs in error. A former suit, between the same parties, to recover for other assessments made upon the same notes, had been compromised by the payment of those assessments, the cancellation of the policies of plaintiffs in error, and the surrender of their premium notes, by the order of the company's board of directors.

By the terms of the charter of the company, each member was entitled to have his premium notes surrendered to him at the expiration of his term of insurance, upon payment of his share of losses and expenses to that time; or upon alienation of the property insured, surrender of his policy, and like payment of his share of losses and expenses; or upon payment of the whole of his premium notes and surrender of his policy.

The charter directed that the board of directors should "superintend the concerns of said company, and have the management of the funds and property thereof, and all matters and things thereto relating."

Held, that the directors of the company had power to compromise the former suit, by canceling the policies and surrendering the premium notes, and that the terms of settlement in that case were such as to constitute a defense against assessments subsequently made upon the same notes on account of losses sustained prior to the settlement.

(123)

ERROR to the court of common pleas of Lucas county. Reserved in the district court.

The Medina County Mutual Fire Insurance Company was incorporated by an act of the Ohio legislature, passed March 16, 1841.    O. L. L. 32.

Daniel Wadsworth, one of the plaintiffs in error, became a member of said company, on the 12th of August, 1847, by an insurance of property therein, for the term of six years; and executed to the company his premium note, with Decius Wadsworth, the other plaintiff in error, as his surety, as follows:

" $55.    For value received on policy No. 1737, dated the 12th day of August, A.D. 1847, issued by the Medina County Mutual Fire Insurance Company, we promise to pay to said company, or their treasurer for the time being, the sum of fifty-five dollars, in such portions and at such time or times as the directors of said company may, agreeable to their act of incorporation, require.            DANIEL WADSWORTH,
                                                  DECIUS WADSWORTH.

" Dated August 12, 1847."

In June, 1848, in July, 1848, and in March, 1849, additional policies were taken out by the same party, and premium notes were executed and delivered on account thereof, with the same surety.

The company continued to transact the business of insurance, and issue policies until November, 1854, when, by a decree of the court of common pleas of Medina county, the defendant in error was appointed receiver of the assets of the company, with authority to sue for, collect and discharge all claims, premium notes and assessments due and owing to the company.

Previous to the appointment of the receiver, the directors of the company had made sundry assessments upon the premium notes to pay the ascertained losses and expenses of the company, and after the appointment of the receiver, the directors, under the authority and in obedience to the com-

mand of the court, made further assessments for the same purpose.

The notes of the plaintiffs in error were assessed for all losses between the respective dates thereof and the 13th day of November, 1852.

Suit was brought by the receiver before a justice of the peace to recover the amount of these several assessments, which came to the court of common pleas of Lucas county on appeal.

On the trial of the action in the court of common pleas, it was submitted upon an agreed statement of facts, as follows :

"In this cause it is agreed that the assessments for which this action is brought were all regularly and legally made, to pay liabilities of the company which had been incurred while the defendants were members, and that the plaintiff is entitled to recover the amount by him claimed, unless the court shall be of opinion that the defendants were, before said assessments made, discharged from their liability on said premium notes by reason of the following facts :

"Prior to the month of October, A.D. 1852, certain assessments had been made by the directors of said company, upon the premium notes described in the petition, to pay liabilities and expenses which said company had incurred, while the defendants were members, and which had at that time been adjusted and allowed. The defendants denied their liability to pay said assessments, claiming that the same had been illegally made, and more than they were legally liable to pay. Suits were commenced against the defendants for the recovery of the amount claimed by the company, to which the defendants set up their defense. Pending the suit and before the trial, the defendants proposed to the company to pay the assessments then made, if the company would cancel the policies and surrender up the premium notes. This proposition was submitted to the directors of the company on the 13th day of November, A.D. 1852, and by them accepted.

"The defendants thereupon paid the amount of assessments for which said suit had been brought, and the said company, at a regular meeting of the directors thereof, on the 11th day

of April, A.D. 1853, entered upon their records the following order, canceling said policies, and ordering said premium notes to be surrendered to said defendants, to-wit: ' On motion, it is ordered that the secretary be authorized to cancel the policies of Daniel Wadsworth, and to surrender his premium notes in compliance with the agreement heretofore made,' and said policies were thereupon canceled, and an order given to said defendant on the justice of the peace, who held possession of said premium notes to deliver them up to said defendant.

" The policies issued to the defendants were in full force, and the premium notes liable to assessment at the time the assessments were made, which were so paid by the defendants.

" The assessments made upon said premium notes for which this action is prosecuted were made to pay liabilities of the company, existing at the time said policies were canceled as aforesaid, but which were not at that time admitted by the company, and also to pay balances due upon liabilities at that time acknowledged, but for the payment of which the assessments then made proved insufficient, either by reason of their not being collectable or not originally sufficient in amount."

Judgment was rendered in favor of the receiver, whereupon the now plaintiffs in error filed their petition in the district court to reverse the judgment of the common pleas, which was reserved to this court for decision.

*Bassett & Kent*, for plaintiffs in error, insisted that the court of common pleas erred in deciding that they were liable to pay the assessments mentioned in the petition below, notwithstanding the discharge thereof mentioned in the agreed statement of facts.

*M. R & R. Waite*, for defendant in error:

I. The agreement to " cancel the policies and surrender the premium notes," did not operate to relieve the plaintiffs in error from liability to pay their proportion of the losses which had been incurred by the company up to that date.

1. Membership, at the time of the assessment, is not necessary to authorize an assessment upon premium notes to pay for losses accruing while the policy was in force and its

holder a member of the company. *The St. Louis Mutual Fire and Marine Insurance Co.* v. *Boeckler*, 19 Misso. 13 ; *Herkimer County Insurance Co.* v. *Fuller*, 14 Barb. 373 ; *Wright* v. *Knepper*, 1 Pa. St. Rep. 359.

2. The directors had no power under their charter to surrender the notes in question, so as to relieve them from liability to be assessed for losses which had already been incurred ; consequently the surrender was void as to parties interested in such losses. *Smith* v. *Haverhill Mutual Fire Insurance Co.*, 1 Allen (Mass.), 296 ; 3 Comst. 391 ; *Bangs* v. *Skidmore*, 21 N. Y. 145.

We have thus far argued the case as though there was power in the directors to release the members of the company from their liability as such, under the charter upon such application as was made by the plaintiffs in error, except as to past losses and expenses. Such, however, we by no means admit to be the case, and we claim that whenever a person once becomes a member of the company, he can not be relieved from any liability as such member, until—

1. The term of his insurance has expired by lapse of time, and he has paid his due share of the losses and expenses up to that time. (Sec. 5), or—

2. The property insured has been alienated by sale, and the member has surrendered his policy to the company, and paid his proportion of losses and expenses to that time. (Sec. 12), or—

3. The member has paid the whole of his premium note and surrendered his policy. (Sec. 9.)

In each of these three cases, by the express provisions of the charter, the membership of any person may be terminated. It can not in any other. Therefore, notwithstanding the action of the directors, the plaintiffs in error continued members of the company until the terms of their insurance expired by lapse of time, and being members, their notes were subject to assessment, not only for past but future expenses and losses.

II. By the agreed case, it appears that a part of the assessments to recover which the action was brought, was made

to pay balances due upon liabilities existing at the time the surrender was made, but for the payment of which the assessments then made proved insufficient by reason of their not being collectable. The case of *Bangs* v. *Gray*, 2 Kern. 477, fully sustains the legality of such an assessment.

SCOTT, J.—From the agreed statement of facts in this case, it appears that the directors of the company, now represented by the defendant in error, heretofore brought an action to recover from the plaintiffs in error the amount of certain assessments which had been made on their premium notes, executed at the time policies were taken out by the principal in those notes; and the validity of those assessments was denied by the plaintiffs in error. A defense was accordingly made to the action, in regard to the merits of which, we have no means of judging.

While this controversy was still pending, and its result uncertain, the plaintiffs in error proposed to end the litigation, by paying the amount then claimed, if the company would cancel the policies of the principal in the notes (which would, of course, terminate his membership in the company), and would also surrender up the premium notes, upon which the assessments then in controversy had been made, and which constituted the basis upon which alone assessments against them could be made. This proposition was submitted to the directors of the company, and was by them accepted. The plaintiffs in error thereupon paid the pending claim of the company, and the directors, several months afterward, at a regular meeting, entered upon their records an order, directing the cancellation of the policies, and the surrender of the notes, and this order was carried into execution. We think there is no room to doubt, fro n the terms of this contract, that the intention of the parties was, not only to terminate the membership of Daniel Wadsworth, the principal in the notes, but also, that the sums of money then paid should be accepted in full satisfaction of all liability to further assessments upon the notes which were then surrendered. These notes formed, as we have said, the basis of all assessments;

they created the liability, and determined its proportionate amount; and their authorized surrender must have been regarded by the parties as terminating all rights and liabilities arising under them.

For this contract on the part of the directors, it is not denied that the settlement of the controversy then pending, by the payment of their disputed claim, would constitute a valid consideration.

If, then,, we have construed the contract correctly, the only question in the case is one of *power* on the part of the directors—could they bind the corporation which they represent, by such a contract?

The 5th section of the company's act of incorporation, provides that, at the expiration of a member's term of insurance, his premium note, or such part of it as shall remain unpaid after deducting all losses and expenses occurring during said term, shall be relinquished and given up to him. The 9th section provides for his discharge, upon the payment of the whole of his note, and the surrender of his policy. And by the 12th section, when the property insured has been alienated by sale, and the member has surrendered his policy to the directors, he shall be entitled to receive his deposit notes, upon payment of his proportion of all losses and expenses to that time. Now, it is claimed, that as no other cases of discharge are provided for in the charter, the directors could relieve from liability in such cases only. But, these are all cases in which a member has a right to demand the surrender of his premium or deposit note, and the directors have no discretionary power to retain it. These sections throw no direct light upon the question, whether the parties whose agreement created the contract of insurance, may not, by special contract, made upon sufficient consideration, cancel and put an end to its stipulations. To ascertain the extent of the discretionary powers conferred on the board of directors, we must look, not to these sections of the charter, but to the 4th, which, it will be seen, is very comprehensive in its terms. It reads thus:

" SEC. 4. The board of directors shall superintend the con-

cerns of said company, and shall have the management of the funds and property thereof, and all matters and things thereto relating, and not otherwise provided for by said company. They shall have power from time to time to appoint a president, secretary, treasurer, and such other officers, agents and assistants as to them may seem necessary, and prescribe their duties, fix their compensation, take such security from them as they may deem necessary for the faithful performance of their respective duties, and them remove at pleasure; they shall determine the rates of insurance, the sum to be insured on any building, and the sum to be deposited for the insurance thereof; they shall order and direct the making and issuing of all policies of insurance; the providing of all books, stationery and other things needful for the office of said company, and for carrying on the affairs thereof, and may draw on the treasurer for the payment of all losses which may have happened, and for expenses incurred in transacting the concerns of the company. They shall elect one of their own number to act as president; they may hold their meetings monthly, and oftener if necessary, for transacting the business of the company, and shall keep a record of their proceedings, and any director disagreeing with the majority of the board at any meeting, may enter his dissent with his reasons therefor, on record."

It is evident, from this section, that the board of directors was intended to be the directing mind of the corporation, in the transaction of all its business concerns. The directors appoint all the other officers and agents of the company, prescribe their duties, fix their compensation, and remove them at pleasure; dictate the terms of every policy of insurance issued; draw on the treasurer for the payment of losses and expenses; and have the general superintendence of the concerns of the company; the management of all its funds and property, and all matters and things in relation thereto, not otherwise provided for. In the absence of any special provision of the charter, or by-law of the company, to the contrary, we think it clear from these general powers, that the judgment of the directors must determine when ac-

tions shall be prosecuted or defended, on behalf of the company; and charged as they are with the superintendence and management of all its concerns, funds, property, and every thing relating thereto, it would be strange if they had not the power to compromise and settle a suit which they had improvidently brought. Such a power would seem to be indispensable to the proper discharge of the duties devolved upon them—and its existence is therefore implied. And when exercised in good faith, those whom they represent, must, of course, be bound thereby.

The judgment of the court of common pleas will be reversed, and judgment entered for the defendants below.

SUTLIFF, C.J., and PECK, GHOLSON and BRINKERHOFF, JJ., concurred.