**In re KEITHLEY INSTRUMENTS, INC., DERIVATIVE LITIGATION.**

**This Document Relates To: All Actions.**

**Case No. 1:06CV2171.**
**Member Case Nos. 1:06CV2172, 1:06CV2554, 1:06CV2572.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 20, 2009.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This matter is before the Court on motions to dismiss filed by nominal defendant Keithley Instruments, Inc. ("KEI") (Doc. No. 79), and by the individual defendants Brian Bachman, James Bartlett, Philip Estler, James Griswold, Hermann Hamm, Leon Hendrix, Frederick Hume, Joseph Keithley, David Patricy, John Pesec, Mark Plush, Ronald Rebner, N. Mohan Reddy, Gabriel Rosica, Terrence Sheridan, R. Elton White, and D. Sherman Willows (collectively, the "Individual Defendants") (Doc. No. 80). KEI's motion simply incorporates the arguments advanced by the Individual Defendants. The motions are fully briefed and ripe for decision.[1]

## I. Statement of Facts and Procedural Background

Plaintiffs, shareholders of KEI, bring this derivative action alleging that improperly backdated stock options were granted to certain of the Individual Defendants between September 1995 and July 2002. On March 21, 2008, the Court dismissed Plaintiffs' prior complaint[2] pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 for failure to make a demand on KEI's board of directors or properly plead demand excusal. (Doc. No. 74.) The facts as alleged by Plaintiffs were discussed in detail in the Court's decision, familiarity with which is assumed.

The Court concluded that Plaintiffs failed to raise a reasonable doubt regarding the interestedness of a majority of the KEI board of directors as constituted at the time this action was filed (the "Demand Board"). Specifically, the Court found Plaintiffs' allegations sufficient to call into question the disinterestedness of four members of the Demand Board: Keithley, by virtue of his receipt of allegedly backdated stock options, and Bachman, Hendrix, and White, based upon a substantial likelihood of liability stemming from their service on the Compensation Committee when it approved the issuance of the allegedly backdated stock options on July 23, 2002. The Court also granted Plaintiffs leave to amend the complaint.

Plaintiffs filed the Second Amended Consolidated Shareholder Derivative Complaint (in reality, the third amended complaint, referred to herein as the "TAC") on April 21, 2008. In it, Plaintiffs asserted a single "new" fact, which they buried in a footnote: according to a proxy statement filed December 27, 2002, director/defendant Reddy "was a member of the Compensation Committee during the fiscal year ended September 30, 2002." (Compl. at 9, ¶ 29 n. 1.) With this single exception, the TAC is, from a factual perspective, a replica of the second amended complaint. Regarding the legal claims asserted, however, the TAC reflects a radical transformation. The prior complaint asserted federal securities law claims under § 10(b) of the Exchange Act and Rule 10b–5, § 14(a), and § 20(a), as well as state law claims for, inter alia, breach of fiduciary duty and

---

1. This document also relates to and disposes of identical motions filed in the following related cases, all consolidated under the caption of the instant case: Case No. 06–2172, Doc. No. 18; Case No. 06–2554, Doc. No. 43; Case No. 06–2572, Doc. No. 39.

2. Notwithstanding the label attached to it by Plaintiffs, this was the second amended complaint filed in this case. *See* Order at 1 n. 1.

unjust enrichment.[3] In contrast, the now-operative TAC omits all federal securities claims, instead promulgating (in addition to the previously-asserted breach of fiduciary duty and unjust enrichment claims) entirely new state law causes of action for common law fraud and conversion.

On June 13, 2008, KEI and the Individual Defendants (together, "Defendants") moved to strike and dismiss the TAC on grounds that (a) the new facts and claims alleged by Plaintiffs exceed the scope of the Court's order granting leave and should be stricken; (b) Plaintiffs lack standing to assert claims arising out of options granted before Plaintiffs became KEI shareholders; (c) Plaintiffs fail to demonstrate that a majority of the Demand Board could not consider a demand fairly and, therefore, demand is not excused; (d) Plaintiffs' state law claims are, with few limited exceptions, time-barred; and (e) Plaintiffs' fraud, breach of fiduciary duty, and conversion claims fail as a matter of law. Plaintiffs filed a response in opposition to the motions (Doc. No. 84), and Defendants replied. (Doc. No. 85.) Plaintiffs filed a notice of supplemental authority, attaching two unpublished district court opinions issued after the close of briefing. (Doc. No. 87.) The Court has considered all the arguments proffered by counsel and decides as follows.

## II. Law and Analysis

### A. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that, on motion of a party, the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike under Rule 12(f) are addressed to the sound discretion of the trial court, but are generally disfavored. *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.,* 961 F.Supp. 1078, 1083 (W.D.Mich.1997) (citations omitted). Striking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require. *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir.1953). However, within this framework, the court retains "liberal discretion" to strike filings as it deems appropriate. *Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.,* 278 F.3d 742, 748 (8th Cir.2001) (citing *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir. 2000)).

Defendants ask the Court to strike portions of Plaintiffs' TAC, arguing that Plaintiffs significantly exceeded the scope of leave granted by the Court's prior order. Defendants maintain that Plaintiffs were given leave only to add any new facts in support of their existing claims that had the potential to call into doubt the disinterestedness of one additional member of the Demand Board, and thus render demand futile. According to Defendants, Plaintiffs did not assert any new facts and abandoned most of their prior claims, instead opting to assert entirely new claims based upon the same facts in an effort to escape the statute of limitations issues that felled their prior attempt at establishing demand futility. Plaintiffs counter that the Court's grant of leave was not limited in the manner suggested by Defendants and permitted them to assert new causes of action. Because the Court agrees with Defendants' interpretation of the Court's prior order granting leave, the motion to strike is well-taken, in part.

---

**3.** While the prior complaint also included causes of action labeled "waste of corporate assets" and "gross mismanagement," the Court determined that such claims were variations on the breach of fiduciary duty claim.

### 1. New Causes of Action

At the conclusion of oral argument on the earlier motion to dismiss, Plaintiffs' counsel requested the opportunity to file an amended complaint. Counsel's plea for leave was as follows:

> If Your Honor were to disagree with us and find that we have come up short in some or all of our pleadings, we will simply request the opportunity to re-plead. We certainly—we haven't done the statistical analysis, but we can. We can allege [with] more particularity what the damages were, how much the company lost. We can allege with particularity pretty much anything that we have to, but we think we met the standard, but in the unlikely event hopefully that we have not, we would simply ask for the opportunity to replead.

(Tr. of March 5, 2008 Mot. Hr'g, Doc. No. 82, at 64:17–65:1.)

While cognizant of Defendants' request for dismissal with prejudice, in light of Plaintiffs' appeal for an opportunity to re-plead, the Court granted leave. The Court did so, however, with specific conditions:

> Pursuant to the request of Plaintiffs' counsel at oral argument, the Court grants leave to amend. However, leave to amend is limited to Plaintiffs' asser-tion of new facts, to the extent any such facts are known to Plaintiffs and can be alleged in good faith, which would allow the assertion of claims against a member of the Demand Board that are not time-barred under the Court's analysis and would arguably lead to a substantial likelihood of liability of the part of the director so implicated.

(Order at 46.)

At the time of the hearing, the Court understood Plaintiffs to be requesting per-mission to remedy any pleading defects identified by the Court in a hypothetical decision (which later became a reality) dis-missing the then-operative Second Amended Consolidated Shareholder Deriv-ative Complaint. This understanding was reinforced by counsel's statements that Plaintiffs would add "particularity" to the allegations to cure any pleading insuffi-ciencies, and that he believed Plaintiffs had "met the standard," i.e., the standard applicable to a claim under Rule 10b–5 on a motion to dismiss. Counsel's statements obviously were addressed to the claims actually set forth in the complaint at the time, particularly the 10b–5 claim, which was the focus of discussions during the hearing. An objective review of the cir-cumstances leads the Court to conclude that, in all likelihood, Plaintiffs' counsel shared the Court's understanding. In other words, Plaintiffs' counsel knew (or in any event should have known) that what he was bargaining for was leave to file another amended complaint in an at-tempt to resolve those deficiencies the Court might (and later did) identify in an order dismissing the second amended complaint. The Court certainly did not understand counsel's request as one for permission to reformulate the complaint, change the basis for the Court's jurisdic-tion, and assert new theories of liability based upon the same set of facts. Noth-ing in the record suggests Plaintiffs in-tended to seek such an expansive grant of leave. Had Plaintiffs made such a re-quest, the Court's response would have been considerably less favorable; indeed the Court would have most probably de-nied it outright. Moreover, had Plaintiffs made such a request, they would have been required to indicate the reason for the late amendment and Defendants would have been given an opportunity to oppose the amendment. By exceeding the parameters of the Court's leave, Plaintiffs denied both the Court and the defendants

the ability to properly consider the merits of such a request.

■ Under Rule 15(a), a party may amend its pleadings once as a matter of course prior to being served with a responsive pleading, but thereafter only with leave of court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). Leave shall be given freely when justice so requires. *Id.* Generally, an amendment that does not comply with Rule 15(a) is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for approval. *Straub v. Desa Indus., Inc.,* 88 F.R.D. 6, 8 (M.D.Pa.1980); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Four Ambassadors,* 599 F.Supp. 534, 537 n. 5 (S.D.Fla. 1984). Having concluded that the changes made by Plaintiffs' amended complaint exceeded the scope of leave granted, the Court finds the TAC fails to comply with Rule 15(a).[4] Accordingly, the Court views the TAC as a proposed amendment and must determine whether to grant leave at this time. A motion for leave to amend may be denied on any of five well-established grounds, including prejudice to the opposition. *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "[P]rejudice to the nonmoving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir.1993). Among the relevant considerations, prejudice to the opposing party carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003) (citing *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 185 (9th Cir.1987)). For these purposes, prejudice has been defined to include "undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party."

*Deakyne v. Comm'rs of Lewes,* 416 F.2d 290, 300 (3d Cir.1969).

Faced now with Defendants' motion to strike, the Court finds that the new causes of action must be stricken because their inclusion in the TAC far exceeded the scope of leave granted by the Court, and allowing them to stand would severely prejudice Defendants. While the precedent in this area is rather sparse, as a general rule courts are reluctant to strike otherwise pertinent parts of a complaint even where the filing exceeded the scope of leave granted by the court. *See Shirk v. Fifth Third Bancorp,* No. 05–cv–049, 2008 WL 4449024, at *13–14 (S.D.Ohio Sept. 26, 2008) (citing *In re One Meridian Plaza Fire Litig.,* No. 91–2171, 1993 WL 308726, at *2, 1993 U.S. Dist. LEXIS 11126, at *4 (E.D.Pa. Aug. 12, 1993); *Wallace v. Sys. & Computer Tech. Corp.,* No. 95–cv–6303, 1997 WL 602808, at *8 (E.D.Pa. Sept. 23, 1997)). However, those courts permitting excessive filings to stand generally rationalize the decision on the basis of a close relationship between the new portions of the complaint filed without leave and the prior version of the complaint.

For instance, in *Wallace,* (like the instant matter, a securities law action), the district court had dismissed the plaintiffs' first amended complaint pursuant to Rules 12(b)(6) and 9(b) and sua sponte granted leave to amend the complaint a second time. *Wallace,* 1997 WL 602808, at *1. The grant of leave was limited to permit plaintiffs to amend "if [they could] supplement [their] allegations with more detailed information about [defendant's] alleged involvement with the analyst reports." *Id.* Without seeking additional leave, the plaintiffs filed a second amended complaint

---

**4.** Plaintiffs already amended the complaint once as of right and therefore further amend-ments could only be made by obtaining leave of court. Fed.R.Civ.P. 15(a)(2).

"in which they apparently abandoned the allegations regarding the two analyst reports and assert[ed] various new allegations which were not contained in the amended complaint." *Id.* The defendants moved to strike, and while the district court concluded that the plaintiffs had exceeded the scope of the order granting leave, it denied the motion, finding that "the changes in the [second amended complaint were] not substantial." *Id.* at *8. The court in *Wallace* stated that "[a]lthough plaintiffs have added some new allegations, they are closely related to the allegations in the first amended complaint and the general theory of recovery remain[s] the same." *Id.*

Likewise, in *Shirk*, the district court denied a motion to strike and allowed allegations asserted by the plaintiffs in excess of the court's grant of leave to stand. In doing so, the court found "that the additional facts and allegations included in Plaintiffs' second amended complaint [were] not significantly different from the allegations in the proposed second amended complaint." *Shirk*, 2008 WL 4449024, at *14. The court explained that the complaint filed without leave merely separated out two claims previously combined into one, and added additional facts to bolster certain claims. *Id.*

In contrast to *Wallace* and *Shirk*, the differences between Plaintiffs' second amended complaint and the TAC are substantial, and the theories of recovery are vastly different. Indeed, with the single exception discussed infra, Plaintiffs have entirely disregarded the Court's grant of leave (that they specifically requested) and instead dismissed their federal securities claims and asserted two entirely new and different state law causes of action. In doing so, moreover, Plaintiffs altered the basis for this Court's jurisdiction, converting the case from a federal question matter to one under diversity. If any instance of a change in tactics or theory constitutes prejudice to the defendant warranting denial of leave to amend, it is this one. For nearly two years, Defendants believed they were defending a federal question case involving claims under the federal securities laws. Plaintiffs' complaint set out these federal claims in exquisite detail, and Defendants dutifully investigated these claims, strategized, and formulated a response. Defendants successfully obtained dismissal of the complaint, but the Court, at Plaintiffs' request, granted leave to amend. The Court understood this request—and its order granting it—as a plea by Plaintiffs for an opportunity to add to the complaint's factual allegations. Certainly, silence by Plaintiffs' counsel and the Court as to the addition of new causes of action cannot plausibly be construed as permitting leave to include such matters as have now been alleged in the TAC. *See In re Katrina Canal Breaches Consol. Litig.*, No. 05–4182, 2008 WL 4936840, at *1 (E.D.La. Aug. 26, 2008) (following a specific grant of leave, the plaintiffs filed an amended complaint exceeding the leave granted, and the court granted the defendants' motion to strike the portions of the amended complaint filed in excess of the court's grant of leave, concluding that "[a]ny silence concerning other potential topics did not mean that leave was given for any addition or change not specifically addressed at that time.") This is not a case, such as those involving pro se litigants, where pleading amendments are entitled to a generous helping of liberality; far from it. Plaintiffs are represented by highly sophisticated counsel, and certainly could have requested more expansive leave had they deemed it advisable.

Yet rather than confine themselves to the order granting leave, Plaintiffs omitted the federal securities claims entirely, changed the jurisdictional basis for the

complaint, and asserted two entirely new causes of action under state law. These causes of action—for common law fraud and conversion—are based upon the exact same set of factual allegations present in earlier iterations of the complaint. *See Lyddy v. Bridgeport Bd. of Educ.*, No. 3:06CV1420(AHN), 2008 WL 2397688, at *3 (D.Conn. June 10, 2008) (where plaintiff knows of facts supporting new claims at time original complaint is filed, it is difficult to posit a satisfactory explanation for the failure to plead such claims at the outset). Absolutely no legitimate reason exists for having omitted these claims from the three complaints filed prior to this one. Plaintiffs make no effort to explain this failure. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.1986). Although it goes unmentioned, the underlying reason itself is obvious: the new state law causes of action represent a transparent attempt by Plaintiffs to avoid the statute of limitation issues identified in the Court's prior order so they can reach back far enough into the past to capture a fifth member of the Demand Board and thereby establish futility. The Court cannot permit such a result. To do so essentially would render all the work put into this case (now pending more than two years)—three previous versions of the complaint, the parties' well-researched and capably argued motion to dismiss, and the Court's thorough opinion dismissing the complaint—a mere dress-rehearsal, a costless opportunity for Plaintiffs to test out various legal theories at Defendants' (and the Court's) expense. "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994) (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469–70 (5th Cir.1967)). "At some point, a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides [ . . . ] possible grounds for relief and should be considered." *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir.1980) (citation omitted). "The district court has discretion in deciding whether the late shift in the thrust of the case will unfairly prejudice the defendants in their defense." *Id.* (internal quotation and citation omitted). Having simply dropped from the complaint its federal securities claims, which previously served as the focal point of the action as well as the basis for this Court's jurisdiction, Plaintiffs effectively squandered untold hours of time expended by Defendants, Defendants' counsel, and the Court. Allowing Plaintiffs to start from scratch in a third amended complaint with new claims they had every reason to know of, but neglected to assert, at the outset of this case, would work significant prejudice to Defendants. *See Rehab. Inst. of Pittsburgh v. Equitable Life Assurance Soc'y of United States*, 131 F.R.D. 99, 102 (W.D.Pa.1990) (denying defendant leave to amend answer to assert ERISA preemption defense where case had been proceeding on state law theories under diversity jurisdiction for several years, resulting in unfairness to plaintiff); *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir.1982) (no abuse of discretion in denying motion to file amended complaint submitted after court granted defendants' motions to dismiss and plaintiff "provided no satisfactory explanation for [its] failure to fully develop his contentions originally, and the amended complaint was brought only to assert new theories, if anything, and was not premised upon new facts.")

Without question, is inequitable to Defendants to force them to chase Plaintiffs down blind legal alleys while Plaintiffs search for one leading to their desired destination. Rather, Plaintiffs must put their best legal foot forward, and the Court is under no obligation to permit them to test-drive various potential causes of action, using the defendant's responsive motion practice and the Court's opinions as a kind of roadmap in an effort to find a meritorious claim. "Plaintiffs must exercise due diligence in amending their complaints. As a corollary of that principle, busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir.2006). Under the circumstances, the Court finds that striking the claims filed in excess of the prior grant of leave is necessary to further the interests of justice and avoid serious prejudice to Defendants. Accordingly, the newly-asserted claims of common law fraud and conversion are stricken from the complaint.[5]

## 2. New Factual Allegation

Defendants also ask the Court to strike the lone factual allegation added to the TAC because it is not, in fact, a "new" allegation. The allegation at issue is that director/defendant N. Mohan Reddy, a member of the Demand Board, was on the Compensation Committee when it approved the July 23, 2002 stock options.

Not stated in any prior complaint, this allegation purportedly derives from a proxy statement filed with the SEC on December 27, 2002, and publicly available since that time.

Given its source, the allegation is not "new," at least in the sense that "new" means "recently made available to Plaintiffs." Rather, like many of the other allegations in each of Plaintiffs' several complaints, it is based upon widely available information, the import of which Plaintiffs have known since the outset of this litigation (when they first raised allegations of backdating involving the Compensation Committee). However, by inserting this allegation into the TAC, Plaintiffs have not strayed as far afield of the Court's order granting leave as they did by including new substantive causes of action. While the Court agrees with Defendants that the allegation is not new, and either was or should have been known to Plaintiffs when they filed the earlier complaints, this should not ipso facto preclude its inclusion in the TAC. The very purpose of the order granting leave was to provide Plaintiffs an opportunity to augment, to the extent possible, the complaint's factual allegations. While it is of concern to the Court that Plaintiffs failed to allege this fact previously—particularly when the earlier motion to dismiss was being briefed—the Court declines strike Plaintiffs' allegation regarding Reddy's Compensation Committee service.

5. Another way to conceptualize the issue is to, in essence, rewind the clock to the oral argument on the prior motion to dismiss and consider what result would have obtained if Plaintiffs, without proffering a proposed amended complaint, had explicitly requested leave to file a TAC promising to add no new facts, two new causes of action based upon the same old facts, drop the federal securities claims, and switch the basis for the Court's jurisdiction from federal question to diversity.

The answer is that the Court would have denied such a broad request. The Court's position then, as now, was that Plaintiffs were free to amend the complaint to make the best possible showing in support of the claims set forth in the Second Amended Complaint, in light of the defects identified in the Court's order of dismissal. Plaintiffs have been given the opportunity to do so and have elected not to remedy the deficiencies.

**B. Motion to Dismiss**

**1. Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. The Court views the complaint in a light most favorable to the plaintiff, assumes that the plaintiff's factual allegations are true, and determines whether the complaint states a valid claim for relief. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir.1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir.1996). To survive the motion, the court must determine that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege either direct or inferential allegations regarding all of the material elements necessary to sustain recovery under some viable legal theory. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements.

Generally, a claim need only give fair notice as to the grounds upon which it rests. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). However, in a shareholder derivative suit, a plaintiff must allege, with particularity, that a presuit demand was made upon the Board or the reasons for not doing so. *See* Fed. R.Civ.P. 23.1; Ohio Civ. R. 23.1. This requirement differs substantially from the principles of notice pleading. *See McCall v. Scott*, 239 F.3d 808, 815 (6th Cir.2001) (*citing Brehm v. Eisner*, 746 A.2d 244, 254 (Del.2000)).

▪ In the context of a motion to dismiss a securities fraud claim, a court "may consider the full text of the SEC filings, prospectus, analyst's reports and statements 'integral to the complaint,' even if not attached, without converting the motion into one for summary judgment under Fed.R.Civ.P. 56." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360–61 (6th Cir.2001) (citing *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir.1991)). In addition, the Court may consider documents to which the plaintiffs refer in their complaint, even if the plaintiffs do not attach them as exhibits, as long as these documents are central to plaintiffs' claims. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997). Similarly, the Court may consider public records and matters of which a court may take judicial notice without converting the motion to dismiss into a motion for summary judgment. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999).

**2. Demand Futility**

Defendants move to dismiss this action based upon Plaintiffs' failure to make a pre-litigation demand to the Board. Federal Rule of Civil Procedure 23.1 provides that in a shareholder derivative action, the complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Motions to dismiss for failure to allege demand futility are considered under Fed.R.Civ.P. 12(b)(6). *McCall*, 239 F.3d at 815. Whether to excuse the failure to make demand is determined under the substantive law of the state of incorporation. *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96–97, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). KEI is an Ohio corporation, so the Court applies

Ohio law to determine whether demand may be excused.[6]

■ In Ohio, the "directors of a corporation are charged with the responsibility of making decisions on behalf of the corporation and are the proper parties to bring a suit on behalf of the corporation or, in their business judgment, to forego a lawsuit." *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617–18 (6th Cir.2008) ("*Ferro II*") (quoting *Drage v. Procter & Gamble*, 119 Ohio App.3d 19, 24, 694 N.E.2d 479 (1st Dist.1997)). Ohio state law provides that "[e]xcept where the law, the articles, or the regulations require action to be authorized or taken by shareholders, all of the authority of a corporation shall be exercised by or under the direction of its directors." Ohio Rev.Code § 1701.59(A).

■ Under Ohio law, it is presumed that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation. Ohio Rev.Code § 1701.59(C)(1); *Drage*, 119 Ohio App.3d at 25, 694 N.E.2d 479 (citation omitted). The board of directors has the primary authority to file a lawsuit on behalf of the corporation. *Flarey v. Youngstown Osteopathic Hosp.*, 151 Ohio App.3d 92, 95, 783 N.E.2d 582 (7th App. Dist.2002) (citing *Wadsworth v. Davis*, 13 Ohio St. 123, 130–131 (1862)). The shareholders may make a demand on the directors to bring a suit on behalf of the corporation, but no shareholder has an independent right to bring suit unless the board refuses to do so *and* that refusal is wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias on the part of the directors. *Drage*, 119 Ohio App.3d at 24, 694 N.E.2d 479 (citing *Cooper v. Cent. Alloy Steel Corp.*, 43 Ohio App. 455, 459–60, 183 N.E. 439 (5th Dist.1931)).

An exception to the general demand rule permits a shareholder to proceed with an independent suit without making a demand when the shareholder can demonstrate that the demand would have been futile. Ohio Civ. R. 23.1. "Futility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed. It is not enough to show that the directors simply disagree with a shareholder about filing a suit." *Drage*, 119 Ohio App.3d at 25, 694 N.E.2d 479.

Establishing demand futility under Ohio law "is not an easy task." *In re Ferro Corp. Derivative Litig.*, No. 1:04CV1626, 2006 WL 2038659 at *5 (N.D.Ohio Mar. 21, 2006) ("*Ferro I*") (citations omitted). The demand requirement is not a procedural technicality. "Rather, it serves the very important purpose of ensuring that before a shareholder derivative suit is brought, the company's board of directors has considered all possible intracorporate remedies." *Grand Council of Ohio v. Owens*, 86 Ohio App.3d 215, 221, 620 N.E.2d 234 (10th Dist.Ct.App.1993) (quoting *Smachlo*

---

6. The Court also will consult Delaware law regarding demand futility. The demand futility issues raised in this case are numerous, complex, and potentially dispositive. The issues are also rather new, given the recent emergence of stock option backdating, and there are no such cases interpreting Ohio law. By comparison, the body of case law interpreting Delaware corporation law on demand futility in the context of option backdating allegations is highly developed. The Court perceives no substantive difference between Ohio and Delaware law on this issue, and Ohio courts routinely look to Delaware case law for guidance in deciding corporate law issues generally, and demand futility issues specifically. *Cf. Drage*, 119 Ohio App.3d at 25, 694 N.E.2d 479. Both parties repeatedly reference cases dealing with Delaware law in their briefs. Accordingly, the Court refers often to such authorities, and, unless distinguished, treats those cases as highly persuasive.

*v. Birkelo,* 576 F.Supp. 1439, 1443 (D.Del. 1983)). Corporate management must have the first opportunity to initiate litigation, since the responsibility for determining whether or not the corporation should pursue a claim in court ordinarily is an issue of internal management that rests within the discretion of the directors. *Davis v. DCB Fin. Corp.,* 259 F.Supp.2d 664, 670 (S.D.Ohio 2003).

■■■ To excuse demand, a plaintiff must overcome the presumption that the board of directors can make an unbiased, independent business decision about whether it would be in the corporation's best interests to bring a lawsuit.[7] *Drage,* 119 Ohio App.3d at 25, 694 N.E.2d 479. Accordingly, "a bare allegation that the directors would not want to sue themselves or each other does not show that demand would be futile." *Id.; see also Carlson v. Rabkin,* 152 Ohio App.3d 672, 680–81, 789 N.E.2d 1122 (1st App.Dist.2003). Plaintiffs are required to show that the presumption of independence does not exist. *Id.* at 26, 694 N.E.2d 479. "Ohio courts have found a demand presumptively futile 'where the directors are antagonistic, adversely interested, or involved in the transactions attacked.'" *Ferro II,* 511 F.3d at 618 (quoting *Bonacci v. Ohio Highway Express, Inc.,* No. 60825, 1992 WL 181682, at *4 (Ohio Ct.App. 8th Dist. July 30, 1992)). "Examples of when a demand would be excused as futile include when all directors are named as wrongdoers and defendants in a suit, when there is self-dealing by the directors such that the directors gain directly from the challenged transactions, or when there is domination of nondefendant directors by the defendant directors." *Carlson,* 152 Ohio App.3d at 681, 789 N.E.2d 1122. The shareholders bear the burden of proving futility. *Drage,* 119 Ohio App.3d at 25, 694 N.E.2d 479.

■■■ Demand futility is assessed with respect to the board as it existed at the time the complaint was filed. *McCall,* 239 F.3d at 816; *Drage,* 119 Ohio App.3d at 26, 694 N.E.2d 479. To establish futility, Plaintiffs must show that a majority of the Board members are subject to a disqualifying interest. *McCall,* 239 F.3d at 826; *Drage,* 119 Ohio App.3d at 29, 694 N.E.2d 479. To excuse demand in this case, Plaintiffs must set forth particularized facts establishing that a least five of the ten KEI Board members as of August 9, 2006, were not sufficiently disinterested, and therefore could not have considered a demand fairly.

■■■ A director is considered interested when, for example, he will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a "materially detrimental impact" on a director but not the corporation or its stockholders. *Rales v. Blasband,* 634 A.2d 927, 936 (Del.1993). While the mere

---

7. Courts assessing demand futility under Delaware law apply one of two tests. Where the challenged transaction was approved by the board, demand is futile where, "under the particularized facts alleged, a reasonable doubt is created that (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis,* 473 A.2d 805, 814–15 (Del.1984). Under the *Aronson* test, if either prong is satisfied with respect to half or more of the board members at the time the complaint was filed, demand is excused. *Brehm v. Eisner,* 746 A.2d 244, 256 (Del. 2000). If the board did not approve the challenged transaction, then the *Aronson* test does not apply, and demand is excused if the well-pleaded allegations of the complaint give rise to a reasonable doubt that the board can exercise "its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband,* 634 A.2d 927, 933–34 (Del.1993).

threat of personal liability is not sufficient, reasonable doubt as to the disinterestedness of a director is created when the particularized allegations in the complaint present "a substantial likelihood" of liability on the part of a director. *See Rales,* 634 A.2d at 936 (quoting *Aronson v. Lewis,* 473 A.2d 805, 815 (Del.1984)); *In re Baxter Int'l, Inc. S'holders Litig.,* 654 A.2d 1268 (Del.Ch.1995).

### 3. Receipt of Allegedly Backdated Options

Consistent with the Court's prior conclusion, Defendant Keithley could not consider a demand properly because he received a significant number of allegedly backdated stock options. Plaintiffs do not allege that any other member of the Demand Board received manipulated options.

### 4. Potential Liability of Compensation Committee Members

In opposition to the motions to dismiss, Plaintiffs assert that defendants Bartlett, Bachman, Griswold, Hendrix, Reddy, and White all faced a substantial likelihood of liability for approving various stock option grants and therefore could not consider a demand. In its prior opinion, the Court found that Bachman, Hendrix, and White possessed a disabling interest in the litigation by virtue of their service on the Compensation Committee that approved the July 23, 2002 stock options, the only option grant deemed actionable (i.e., not time-barred) under the Court's analysis.[8] Based on the then-operative Second Amended Complaint, the Court concluded that neither Griswold (whose Compensation Committee service ended in 2001) nor Reddy (whose service did not begin until after

July 23, 2002) faced a substantial likelihood of liability for approving manipulated options.

■ It is necessary at this stage to identify the source of the "substantial likelihood of liability," which the Court neglected to do in its earlier decision. The Court's decision expressly followed that of the Delaware Court of Chancery in *Ryan v. Gifford,* 918 A.2d 341 (Del.Ch.2007). The Court did so, however, without specifically identifying the cause(s) of action acting as the source for the conclusion that certain individual defendants faced a substantial likelihood of liability for their actions. The plaintiff in *Ryan* asserted state law claims for breach of fiduciary duty. *Id.* at 346, 347. As in *Ryan,* Plaintiffs in this case also present breach of fiduciary claims. The two cases differ, however, in one crucial respect. Under Ohio law, the breach of fiduciary duty claims asserted by Plaintiffs are subject to a four-year statute of limitations with no allowance for discovery. The latest allegedly backdated options were granted on July 23, 2002, more than four years before this case was initiated and, therefore, all breach of fiduciary duty claims are completely time-barred as to all of the defendants. Thus, upon further reflection, *Ryan* is distinguishable on this basis, and Plaintiffs' time-barred breach of fiduciary duty claims cannot support the conclusion that any of the KEI directors face a substantial likelihood of liability. Demand is excused only if Plaintiffs have adequately pleaded actionable claims against a majority of the Demand Board (and, therefore, a majority of the Demand Board faces a substantial likelihood of liability).[9]

---

8. The Court found that Plaintiffs' federal securities law claims under § 10(b) and Rule 10b-5 were not time-barred.

9. Plaintiffs arguably could have sought a finding of "substantial likelihood of liability" against members of the Demand Board based upon the federal securities claim under § 10(b) and Rule 10b-5 asserted in the prior

With the exception of the common law fraud and conversion claims asserted in excess of the Court's grant of leave (and which the Court has ordered stricken from the TAC), the only state law claims asserted against members of the Demand Board are the same breach of fiduciary duty claims addressed in the Court's prior opinion. Those claims are time-barred. Consequently, Plaintiffs fail to establish a substantial likelihood of liability against a majority of the Demand Board.

## III. Conclusion

For the foregoing reasons, Defendants' motion to strike is **GRANTED, in part,** and **DENIED, in part.** Plaintiffs' common law fraud and conversion claims are hereby **STRICKEN** from the TAC. Based upon the remaining claims in the TAC, Plaintiffs have not stated particularized allegations establishing a reasonable doubt as to the independence or disinterestedness of a majority of the Demand Board. Accordingly, Plaintiffs have failed to show that demand is excused. The motions to dismiss filed by the Individual Defendants (Doc. No. 80) and the nominal defendant KEI (Doc. No. 79) are hereby **GRANTED.**

**IT IS SO ORDERED.**

complaint. This claim, as founded upon the stock options granted July 23, 2002, was the only non-time-barred claim set forth in the Second Amended Complaint. However, Plaintiffs omitted this claim from the TAC. At the oral argument on the prior motions to dismiss, Plaintiffs conceded that the 10b-5 claim based upon the July 23, 2002 option grant was legally defective because the amount of money involved (i.e., the difference between the option price as granted and 20 if priced appropriately) was immaterial. Of course, Plaintiffs cannot establish a substantial likelihood of liability based upon claims they admit fail as a matter of law and no longer seek to assert in this action. Plaintiffs must, therefore, look to their state law claims in hopes of establishing potential liability sufficient to excuse demand.