**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0554n.06

Case No. 16-5320

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 28, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LEONOR PAGTAKHAN-SO, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ALEX CUETO, et al., | ) | KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: SUTTON and STRANCH, Circuit Judges; STEEH, District Judge.*

SUTTON, Circuit Judge. Most legal disputes are about doing well—protecting life, liberty, and property. This is a dispute about doing good—determining who should run a charitable foundation. Three former trustees of the Association of Philippine Physicians in America Foundation sued the Foundation and two board members, alleging mismanagement in violation of Michigan law and the Foundation's charter. But they have not created a justiciable legal dispute. The three plaintiffs do not meet the requirements for bringing an indirect derivative lawsuit on behalf of the Foundation. And their new allegations of personal injury do not give them standing to bring a direct action because the only remedy they seek would not redress any personal harm. We affirm the district court's decision to dismiss their claims for lack of standing.

_____

* The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

I.

The Association of Philippine Physicians in America Foundation is a nonprofit corporation devoted to supporting the work of physicians with Philippine ancestry. Organized under Michigan law, the Foundation is the charitable wing of that enterprise, providing services that include scholarships to students, continuing medical education to Association members, and support for a free clinic in Payatas, Philippines.

In July 2014, after over a decade of conflict-free governance, a few trustees (the plaintiffs here) thought something was amiss with the Foundation's finances. Henry Eugenio and Renato Judalena sent a letter to Leticia De Castro, a defendant and the Chairman of the Foundation, requesting that she bring a number of financial documents to the Foundation's annual meeting. Eugenio and Judalena were not satisfied with the records De Castro provided, and Eugenio decided to run against her for the position of Foundation Chairman. It was the Foundation's first contested election for a position on its board of trustees.

A dispute over the conduct of that election prompted Eugenio, Judalena, and Leonor Pagtakhan-So, a Foundation trustee and the Association's President, to sue the Foundation, De Castro, and Alex Cueto, the former Foundation Chairman, alleging that they had "unlawfully usurped control of the Foundation and used it for their own purposes." R. 14 at 1–2. All three claimed to file the lawsuit in their "capacity as a trustee of the Foundation." *Id.* at 2. They sought an injunction requiring a full accounting of the use of Foundation funds with documentary support and a declaratory judgment that the defendants had violated the Foundation's constitution and Michigan law. After discovery, the request for financial documents and a full accounting became moot. But the parties still disputed whether the Foundation's record-keeping met the standards set by Michigan law, and which of two similar

versions of the Foundation's Constitution should have governed the 2014 board election. The district court granted summary judgment to the defendants on the grounds that the plaintiffs lacked standing to sue for the Foundation's benefit, and that declaratory judgment was unavailable regardless of whether their claims were derivative or direct. Plaintiffs appeal.

II.

*Derivative action.* Civil Rule 23.1 applies "when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action [in federal court] to enforce a right that the [] association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). But the threshold question—whether a suit is a "derivative action" subject to the requirements of Rule 23.1—is a matter of state law in diversity cases like this one. *See Kepley v. Lanz*, 715 F.3d 969, 972–73 (6th Cir. 2013); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003); 12B *Fletcher Cyc. Corp.* § 5911. The Foundation is organized under Michigan law. Michigan uses the common definition of a derivative action: "'Derivative proceeding' means a civil suit in the right of a domestic corporation or a foreign corporation that is authorized to or does transact business in this state." Mich. Comp. Laws § 450.1491a. Put differently, it is a suit to "enforce a right belonging to the fiduciary [corporation or association]." *Strickland v. Douglas*, No. 298756, 2011 WL 6268189, at *2 (Mich. Ct. App. Dec. 15, 2011) (quoting *Black's Law Dictionary* (9th ed.)). In close cases, Michigan sorts the direct from the derivative by "determin[ing] the gravamen of a party's claim based on a review of the entire claim." *Id.*

This is not a close case. The wrongs alleged—failure to keep adequate records and an election of trustees in violation of the applicable Foundation Constitution—amount to classic harms to the association, here the Foundation. Any injuries to the plaintiffs personally are incidental to the injury to the Foundation, and Michigan law classifies claims of that sort as

derivative. *See Mich. Nat'l Bank v. Mudgett*, 444 N.W.2d 534, 536 (Mich. Ct. App. 1989). The remedies sought—a declaratory judgment that the Michigan Non-Profit Act had been violated, and an injunction to remove the offending board members from office—would benefit the Foundation. The complaint contains no claims that any individual rights were violated. Nor do any of the plaintiffs ask for damages or even reinstatement to the board of trustees. What they want is to remove two officers, whom they suspect of embezzling organizational funds (though there's no evidence of that), for the Foundation's benefit.

This conclusion does not rest on implication or inference. Pagtakhan-So, a trustee at the time the complaint was filed, claimed to "bring[] this action [in] her capacity as a Trustee of the Foundation." R. 14 at 2. Judalena and Eugenio were no longer on the Foundation's board at the time of the complaint, but each nonetheless claimed to "bring[] this action in his capacity as a Trustee." *Id.* The complaint sought declaratory judgment and injunctive relief because "[t]he defendants' actions . . . may cause the Foundation to lose some or all of its assets[,] lose the good will of its donors and beneficiaries[, and] may cause the beneficiaries of the charitable work of the Foundation to lose their ability to provide medical care." *Id.* at 8–9. Those are harms to the Foundation. A suit to prevent them is derivative.

The derivative nature of the claims became even clearer at summary judgment. Faced with an argument that they had not been hurt by the Foundation's actions, the plaintiffs responded that they did not need to show any injury. "It is the Foundation," they insisted, "that is harmed by the defendants' actions. . . . Plaintiffs have not brought this suit in their individual capacities, rendering any personal damages completely irrelevant." R. 100 at 19. "Rather," they explained, "the Plaintiffs brought this action in their capacity as Trustees of the Foundation in an attempt [to] obtain declaratory and injunctive relief and to recoup Foundation funds that have

been improperly diverted. . . . As such, it is the Foundation who has suffered actual damages." *Id.* Exactly: This is a derivative lawsuit on behalf of the Foundation.

That means the plaintiffs must satisfy the requirements of Rule 23.1 to proceed in federal court. *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617 (6th Cir. 2008). A plaintiff in a derivative suit must "fairly and adequately represent the interests of [] members" of the organization. Fed. R. Civ. P. 23.1(a). To do so, the complaint must check several boxes. It must (1) allege that the plaintiff was a "member at the time of the transaction complained of," (2) allege that federal jurisdiction has not been triggered through collusion, and (3) "state with particularity [] any effort by the plaintiff to obtain the desired action from the directors or comparable authority [] and [] the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b).

In declining to join the issue on appeal, the plaintiffs effectively concede what is plain: They have not met any of Civil Rule 23.1's demands. The complaint ignores all three requirements. There's no mention of the period of membership or the absence of collusion. And the complaint does not state, with or without particularity, "any effort . . . to obtain the desired action" from the board directly or any reasons for "not making the effort." *See id.* As the district court explained, "[i]t is undisputed that the plaintiffs did not [] request a re-vote following the election in 2014[,] request to be reinstated to the Board[, or] make any motions to the Board of Trustees regarding the alleged discrepancies in the Constitution and Bylaws." R. 134 at 9. Nor did they "seek positions on the Board of Trustees after the 2014 Annual Meeting[,] or [] take any other remedial action which would have addressed the plaintiffs' concerns prior to initiating this action." *Id.* The failure to make any sort of pre-suit demand on the board or to try to explain why such a demand would have been futile stops these claims in their tracks.

5

Federal courts have "leeway to choose among threshold grounds for denying audience to a case on the merits," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quotation omitted), and we thus need not waste ink addressing the (perhaps messy) questions of whether the plaintiffs, none of whom remains a trustee, are "members" or "beneficiaries" of the Foundation under Michigan law, or whether they might still have a "special relationship" sufficient to afford them standing to sue on behalf of the Foundation. No matter the answers to those questions, the plaintiffs have failed to meet the demands of Rule 23.1, and the district court rightly dismissed their claims as a result.

*Direct action*. Faced with this obstacle to a derivative suit, the plaintiffs try to skirt what they cannot conquer. For the first time in this case, they argue on appeal that their challenge to the 2014 board election is "a direct claim, not a derivative one," and that they "belong on the board" and would like to serve on it. Appellants' Br. 17–18. There are many good reasons to reject this argument. First, for the same reasons this *is* a derivative action under Michigan law, it is *not* a direct action, as the injuries invoked and remedies sought are of and for the Foundation.

Second, "absent exceptional circumstances, a court of appeals will not consider an argument by an appellant that was not presented to or considered by the trial court." *Estate of Quirk v. Comm'r of Internal Revenue*, 928 F.2d 751, 757–58 (6th Cir. 1991). Raising new arguments on appeal in an attempt to reverse an unfavorable judgment "is not only somewhat devious, it undermines important judicial values." *Id.* (quotation omitted); *see also Greco v. Livingston Cty.*, 774 F.3d 1061, 1064 (6th Cir. 2014); *Isaak v. Trumbull Sav. & Loan Co.,* 169 F.3d 390, 396 n.3 (6th Cir. 1999).

Third, the plaintiffs lack Article III standing to sue directly. Article III's familiar requirements are: (1) "an injury in fact"; (2) "a causal connection" between the alleged injury

and the defendants' conduct; and (3) redressability—that the injury will "likely . . . be redressed by a favorable decision." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992) (quotations omitted); *Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 579 (6th Cir. 2014). Even if we assume that the use of the wrong constitution in the 2014 election caused the plaintiffs to suffer a concrete injury (which is assuming a lot), they still lack standing because they cannot show that their personal injuries—no longer serving on the board—are likely to be redressed by the relief they request. Judalena served a two-year term as a trustee, in accordance with both versions of the Foundation Constitution, and his term expired five days before the contested 2014 election. That election, and the dispute over which Constitution should have governed, had nothing to do with the end of his tenure on the board. Eugenio stormed out of the 2014 board meeting and withdrew from the election for chairman. He has disclaimed any continuing desire to serve on the board. And Pagtakhan-So remained a trustee until 2015, and eventually her term expired, as it would have regardless of any of the alleged violations of Michigan law or the Foundation's by-laws.

The only relief the plaintiffs ask for is (1) a declaratory judgment stating that the 2014 election was illegal and that the Foundation had failed to follow proper accounting procedure, and (2) an injunction to nullify the 2014 election and remove De Castro and Cueto from their positions as trustees. Neither of those remedies would return the plaintiffs to their positions as trustees or hand the position of chairman to Eugenio, who does not want the job anyway. Perhaps winning this lawsuit and removing De Castro and Cueto from office would increase the plaintiffs' chances of being reelected to the board one day (though none of them has run for a trustee position since 2014). But any prospect of "obtaining relief from . . . a favorable ruling" is, on that theory, "too speculative" on this record. *Allen v. Wright*, 468 U.S. 737, 752 (1984).

If the remedies requested benefit anyone, it is the Foundation. And if the plaintiffs suffered personal injuries, they have not asked for relief that would redress them. They lack standing on that basis.

The plaintiffs' failure to establish direct Article III standing only goes to show that their claims, if any, are indeed derivative. But they have not met the requirements for a derivative suit either. There is, we suppose, something noble in the plaintiffs' attempt to ensure that a charitable foundation is being administered in good faith while asking nothing for themselves. But Article III has no exception for well-meaning lawsuits, and asking for nothing is a sure way to get nothing in a federal court.

For these reasons, we affirm.